435 A.2d 1263

**COMMONWEALTH of Pennsylvania,**

v.

**Roger McINTOSH, Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 28, 1981.

Filed Oct. 16, 1981.

Stuart Wilder, Assistant Public Defender, Doylestown, for appellant.

Michael S. Goodwin, Assistant District Attorney, Doylestown, for Commonwealth, appellee.

Before CAVANAUGH, JOHNSON and LIPEZ, JJ.

CAVANAUGH, Judge:

Appellant, Roger McIntosh, was tried by a jury, convicted, and sentenced to imprisonment on charges arising out of physical abuse of an 18-month-old child.

Appellate counsel who is different from appellant's trial counsel raises a number of issues only one of which we discuss here for we conclude that a new trial must be granted on that issue. We remand for a new trial because appellant received ineffective assistance of counsel when his trial counsel failed on post-trial motions to raise the issue of the admissibility of polygraphic evidence procured through stipulated testing of the appellant.

On November 21, 1976, appellant, McIntosh, was with his son Marcus McIntosh. The child was taken by the Fairless Hills Rescue Squad to Lower Bucks Hospital after receiving an emergency call concerning the child's physical condition. He was transferred later to St. Christopher's Hospital in Philadelphia where he was diagnosed as exhibiting a battered child syndrome based upon the presence of fresh and old injuries. The prosecution of McIntosh grew out of this diagnosis. Appellant's version of events leading up to the hospitalization was that while he and Marcus were together he began to choke on a sandwich that he was eating and that the apparent injuries came from his frantic efforts to assist the child and from a subsequent fall which the child experienced followed by a convulsion.

■ McIntosh and his trial attorney entered into a stipulation with the District Attorney that he would undergo a polygraphic examination prior to trial. The agreement was that the case would be nol prossed if the results showed no deception but that if the results showed deception on the relevant questions the Commonwealth would have the right to use such evidence through the polygraphic examiner at trial. The examiner found that appellant was "attempting deception" on the two relevant questions. At trial, the examiner, Detective Baetzel of the Bucks County District Attorney's office testified as to these results over the objection of defense counsel. However, the issue was not raised on post trial motions, and, therefore, the issue of the admissibility of the polygraphic testimony was not before the court en banc below. It has been raised here by appellant's new counsel in the form of a plea that appellant was deprived of the effective assistance of counsel at the post trial motion stage. It is established that appellant counsel, if new to the case, may allege the ineffectiveness of prior counsel whether at trial or on post verdict motions: *Commonwealth v. Womack*, 270 Pa.Super. 494, 411 A.2d 827 (1979). When, as here, the ineffectiveness of counsel is apparent on the face of the record, we will reach the merits of a claim of ineffectiveness, in the interests of judicial economy, despite the absence of a hearing or determination on the issue below. *Commonwealth v. Sample*, 270 Pa.Super. 47, 53, 410 A.2d 889 (1979).

■ In determining whether a criminal defendant was deprived of the effective assistance of counsel we inquire whether the particular course chosen by counsel had some reasonable basis designed to effectuate his client's interests. *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967). Counsel's stewardship must be examined by the standards as they existed at the time of counsel's action, and counsel will not be deemed ineffective for failing to predict future developments in the law at the time he

decided on a course of action. *Commonwealth v. Triplett,* 476 Pa. 83, 381 A.2d 877 (1977).

■ At the time of the trial of this case there was no Pennsylvania case law which permitted the use of polygraphic evidence even by stipulation. Subsequently, in *Commonwealth v. Pfender,* 280 Pa.Super. 417, 421 A.2d 791 (1980), allocatur denied February 27, 1981, we decided that under such circumstances the evidence was inadmissible. And, this is so even if counsel and a criminal defendant knowingly, voluntarily and intelligently stipulated before trial that the results of such an examination were to be admissible. *Pfender, supra.*

■ Appellant's former counsel did not withdraw before the trial, as did counsel in *Pfender.* Appellant's former counsel did object to the admissibility of the polygraphic examination at trial, but, as indicated did not preserve the objection on post trial motion. The Commonwealth does not advance any reason for this lapse of former counsel which would point to a strategical or tactical motive redounding to the benefit of appellant. Nor can we perceive any. It is apparent on the face of the record that appellant was deprived of the effective assistance of counsel at the post trial motion stage of this proceeding. Although *Pfender* was not decided at the time of trial, the state of Pennsylvania law was that no appellate court had examined the scientific reliability of polygraphic evidence and as such the admissibility of the results of such test even by stipulation was at least doubtful.

■ The Commonwealth urges that the evidence above recited in and of itself was sufficient to establish the appellant's guilt regardless of the admissibility of the polygraph evidence: in essence, that the admission thereof was harmless error. We cannot agree. Inherent in the Commonwealth's evidence was the scepticism of the nurses, doctor, and social worker, all professionals, as to the truth of

appellant's assertions at the time the infant was hospitalized. The polygraphic evidence, in such a context, was devastating and most prejudicial. In fact we can think of no evidence with a greater jury import than scientific evidence that a defendant has lied as to crucial facts.

■ The Commonwealth also urges that we reconsider our decision in *Pfender* especially where the polygraphic evidence is admitted at trial by stipulation. We affirm our decision in *Pfender*. We still do not discern the logical process whereby unreliable evidence becomes reliable merely through stipulation. Where the life or liberty of the citizen may hinge on the results of a test of unproven reliability, holding the testee to his stipulation is at best a perversion of sportsmanship. Conversely, we may legitimately ask, if the test had shown the appellant to be truthful, whether the Commonwealth should be held to its stipulation not to prosecute, if eyewitness evidence of appellant beating the infant repeatedly had come to light, or whether the appellant should be allowed to introduce the test results to refute such evidence? We think a rational system of justice should dictate otherwise in either event. The plain fact of the matter is that a conscientious prosecutor would be most unlikely to stipulate to polygraphic testing of a defendant where sound evidence pointing to guilt was available. Evidence even of a defendant's willingness to take a test is inadmissible: *Commonwealth v. McKinley*, 181 Pa.Super. 610, 123 A.2d 735 (1956).

As we pointed out in *Pfender* the use of polygraphic evidence which deals with the basic issue in a case is very likely to be given great weight by the factfinder. This would seem to be particularly true where, as here, the trial is before a jury and the issue of credibility of the defendant is the very core of the case.

Judgment of sentence reversed and remanded for a new trial.