528 A.2d 610

**COMMONWEALTH of Pennsylvania**

v.

**Debra RODGERS, Appellant.**

**COMMONWEALTH of Pennsylvania**

v.

**David RODGERS, Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 27, 1987.

Filed May 28, 1987.

Reargument Denied July 29, 1987.

478

480

Samuel C. Stretton, West Chester, for appellants.

Joseph W. Carroll, III, Deputy District Attorney, West Chester, for Com., appellee.

Before CAVANAUGH, OLSZEWSKI and MONTEMURO, JJ.

OLSZEWSKI, Judge:

■ Appellants appeal from the judgments of sentence entered after a jury found them guilty of involuntary manslaughter, recklessly endangering another person, and endangering the welfare of a child.[1] On this appeal, appellants argue: (1) that the evidence was insufficient to sup-

1. On October 2, 1985, the trial court sentenced appellant David Rodgers to 11½-to-23-months' imprisonment for involuntary manslaughter and to a concurrent sentence of 11½-to-23-months' imprisonment for endangering the welfare of a child. Appellant Debra Rodgers was sentenced to 1½-to-5-years' imprisonment for involuntary manslaughter and to a consecutive sentence of 1-to-2-years' imprisonment for endangering the welfare of a child. For sentencing purposes, the trial court declined to sentence both appellants on the charge of recklessly endangering another person, finding that it merged with the involuntary manslaughter charge. A timely motion to modify sentence was filed on October 8, 1985.

Subsequently, the trial court vacated the sentences of October 2, 1985 and appellants were resentenced on November 27, 1985. The trial court declined to sentence both appellants on the charge of endangering the welfare of a child, finding that it merged with involuntary manslaughter for sentencing purposes. *See Commonwealth v. Barnhart,* 345 Pa.Super. 10, 497 A.2d 616 (1985). Appellant David Rodgers was resentenced to 11½-to-23-months' imprisonment for involuntary manslaughter only and appellant Debra Rodgers was resentenced to 2-to-5-years' imprisonment for involuntary manslaughter only.

port the verdict; and (2) that the trial court erred by allowing the prosecution to present testimony on the battered child syndrome and by not charging the jury that such testimony should be received with great care and caution.[2] For the reasons stated below, we affirm the judgments of sentence.

With regard to the first issue, we note that the well-established standard for reviewing a sufficiency claim was stated recently by our Supreme Court as:

(W)hether, viewing the evidence in the light most favorable to the Commonwealth, and drawing all reasonable inferences favorable to the Commonwealth, there is sufficient evidence to find every element of the crime beyond a reasonable doubt.... The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence ... Moreover, in applying the above test, the entire trial record must be evaluated and all evidence

---

**2.** Additionally, appellants allege that the trial court erred in imposing a sentence on Debra Rodgers outside of the sentencing guidelines. We, however, find that appellants' presentation of this issue to the Court does not comply with *Commonwealth v. Tuladziecki*, 513 Pa. 508, 522 A.2d 17 (1987). In *Tuladziecki*, our Supreme Court stated that a party appealing the appropriateness of the discretionary aspects of a sentence must specifically comply with Pa.R.A.P. 2119(f), which states:

(f) Discretionary aspects of sentence. An appellant who challenges the discretionary aspects of a sentence in a criminal matter shall set forth in his brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence. The statement shall immediately precede the argument on the merits with respect to the discretionary aspects of sentence.

*See Tuladziecki, supra,* 513 Pa. at 512, 522 A.2d at 19.

In the present case, appellants' brief does not contain a separate section stating the specific reasons why this Court should allow their appeal on the issue of the appropriateness of discretionary aspects of Debra Rodgers' sentence. This failure, which violates Pa.R.A.P. 2119(f), prevents us from addressing appellants' assertion as to why this appeal should be allowed. We, consequently, cannot fulfill our statutory duty, pursuant to 42 Pa.C.S.A. Sec. 9781(b), of exercising our discretion to determine whether "there is a substantial question that the sentence imposed is not appropriate under this chapter (the Sentencing Code)." 42 Pa.C.S.A. Sec. 9781(b). Accordingly, we dismiss appellants' appeal with respect to the issue of the appropriateness of discretionary aspects of Debra Rodgers' sentence.

actually received must be considered ... Finally, the trier of fact, while passing upon the credibility of witnesses and the weight to be afforded the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Griscavage*, 512 Pa. 540, 543, 517 A.2d 1256, 1257 (1986) (quoting *Commonwealth v. Harper*, 485 Pa. 572, 576–577, 403 A.2d 536, 538–539 (1979) (citations omitted)). After thoroughly examining the evidence presented, and taking from it all reasonable inferences favorable to the Commonwealth and resolving all conflicting evidence in favor of the Commonwealth, we find that appellants' claim of insufficient evidence must fail. The trial court's opinion at 3–7 adequately addresses this issue. We, consequently, will address only appellants' second issue in this opinion.

Before addressing the legal issue raised in this case, however, a recital of the facts is necessary. The trial court aptly stated the facts as follows:

On the morning of September 27, 1983, Pennsylvania State Police Officer William Hill received an emergency request for an ambulance from Debra Rodgers, via telephone, for a child (the Rodgerses' two-and-a-half-year-old daughter, Anna Mae) who would not wake up. Before it arrived, however, the Rodgerses themselves took their daughter to Pottstown Memorial Medical Center. Dr. Michael Wrigley, the emergency room physician, pronounced her dead on arrival, observing that she was cold and stiff. He counted approximately thirty bruises on her body and head. The next day, Dr. Robert Catherman of the Medical Examiner's Office in Philadelphia performed an autopsy. Its results confirmed Dr. Wrigley's observations, and suggested malnutrition as the underlying cause of death.

The police obtained separate statements from each defendant. According to them, on the morning of September 27, Anna Mae was "acting weird" and "wasn't breathing properly." Debra Rodgers testified that she was limp "like a puppet ... and I hit her face a couple

times." When there was no improvement, she called for an ambulance. David Rodgers decided to take the child to the hospital, and Anna Mae stopped breathing en route, despite the attempts of Debra Rodgers at CPR. With respect to the child's malnourished condition, Debra Rodgers told police that Anna Mae was "always skinny", and that none of the doctors who had examined her in the past had explained why she failed to thrive. Regarding the bruises over Anna Mae's body, Debra Rodgers told police that the child "bruised easily" and "would throw a fit". Neither defendant could explain how all the bruises were caused.[1]

[1] Medical records indicate that at the time of her death, Anna Mae exhibited the following injuries: bruises and contusions of the head and face, both ears, left elbow, right arm, left and right forearms, left and right knees and thighs, left buttocks, top and back of the left side of the pelvis, and in the center of the right flank. Most of these injuries occurred within 24 to 48 hours of death. There was also a well-healed fracture of the tenth rib, a more recent laceration of the scalp surrounded by abraded skin, and a substantial scar on her right buttock attributable to the removal of an infected birthmark. This two-and-a-half-year-old weighed 15¼ pounds when she died.

Trial court opinion at 2-3 (citations omitted).

At trial, the Commonwealth called as an expert witness Dr. Robert L. Catherman, the forensic pathologist from the Philadelphia Medical Examiner's Officer who conducted the autopsy on Anna Mae Rodgers. Dr. Catherman testified that Anna Mae had suffered from "battered child syndrome." Such a diagnosis simply indicates that a "child received injuries which were inflicted by another person by other than accidental means." Annot., 98 A.L.R.3d 306 (1980).

On appeal, appellants do not challenge Dr. Catherman's qualifications as an expert witness. Rather, appellants argue that the facts in the present case did not fall within the syndrome for the following reasons: the bruises were all recent and there was not a pattern of old and new bruises which is found in cases of battered child syndrome; the court erred in not instructing that such testimony should be received with great care and caution; and by allowing testimony on the battered child syndrome, the trial

court usurped the role of the jury on deciding an ultimate issue. We find that the testimony of a properly qualified expert concerning the battered child syndrome was admissible in the instant case.

■ The determination of the admissibility of expert testimony on battered child syndrome is an issue of first impression in this Commonwealth.[3] Although no Pennsylvania appellate courts have squarely addressed the admissibility of testimony concerning battered child syndrome, references to the syndrome have appeared in reported cases.[4] *See*

3. Although not discussing the battered child syndrome, our Supreme Court's decision in *Commonwealth v. Paquette*, 451 Pa. 250, 301 A.2d 837 (1973), is instructive. In *Paquette*, when appellant-father brought his 6½-month-old stepdaughter to the emergency room of a hospital, she was cyanotic and had no respiration or heartbeat. Subsequently, bruises on her forehead and chin became evident. The child died four days later. Appellant-father was found guilty of murder in the second degree.

On appeal, appellant-father claimed that the evidence was insufficient to sustain his conviction. The Court stated, *inter alia:*

... the medical evidence, offered by the Commonwealth, clearly establishes repeated and severe blows to the infant as being the origin of the factors causing death. Such a finding is completely incompatible with the defense's theory that the injuries were either sustained by a fall from the couch to the floor or an epileptic fit while the child was in the bath. Considering the number of bruises, their severity and their positioning about the head and the face, the fact-finder was justified in rejecting the possibility of accidental or self-inflicted injury particularly when recognizing the mobility of a 6½ month old baby.

*Paquette*, 451 Pa. at 255, 301 A.2d at 840.

Similarly, we can find no reason why the jury should not be allowed to hear and evaluate the opinion of an expert witness that the injuries in a particular case were not accidental. *See infra.*

4. In the first case, this Court determined that the testimony of a properly qualified expert concerning the psychological dynamics of incest and the behavioral pattern of incest victims was admissible. In reaching this determination, the Court cited cases from other jurisdictions which had allowed expert testimony concerning medically recognized syndromes in other areas; one such case concerned battered child syndrome. *See Baldwin*, 348 Pa.Super. at 376, 502 A.2d at 257 (citing *State v. Conlogue*, 474 A.2d 167 (Me.1984)). The Court in *Baldwin*, however, did not address whether testimony on battered child syndrome was admissible in Pennsylvania.

In the latter two cases, although the facts of each case contain a single reference to battered child syndrome, the admissibility of such testimony was neither raised nor addressed in those cases. *See*

*Commonwealth v. Baldwin,* 348 Pa.Super. 368, 502 A.2d 253 (1985); *Commonwealth v. McIntosh,* 291 Pa.Super. 352, 435 A.2d 1263 (1981); *In the interest of Tamela Pernishek,* 268 Pa.Super. 447, 408 A.2d 872 (1979).

The courts of several other jurisdictions have considered the issue, though, and have held that expert testimony regarding battered child syndrome was properly admitted. *See, e.g., People v. Jackson,* 18 Cal.App.3d 504, 95 Cal.Rptr. 919 (1971); *Commonwealth v. Cadwell,* 374 Mass. 308, 372 N.E.2d 246 (1978); *State v. Durfee,* 322 N.W.2d 778 (Minn. 1982); *People v. Henson,* 33 N.Y.2d 63, 349 N.Y.S.2d 657, 304 N.E.2d 358 (1973); *State v. Wilkerson,* 295 N.C. 559, 247 S.E.2d 905 (1978); *State v. Best,* 89 S.D. 227, 232 N.W.2d 447 (1975); *State v. Tanner,* 675 P.2d 539 (Utah 1983).

Initially developed following extensive research more than two decades ago, the diagnosis of battered child syndrome has become an accepted medical diagnosis. *See generally* Kempe, Silverman, Steele, Droegemueller and Silver, *The Battered Child Syndrome,* 13 Journal of the American Med. Ass'n. 105 (1962); 2 Am.Jur.Proof of Facts 2d, *Child Abuse—The Battered Child Syndrome,* (1974). To be admissible at trial, the syndrome must be testified to by a qualified expert witness since:

> "The diagnosis is dependent on inferences, not a matter of common knowledge, but within the area of expertise of physicians whose familiarity with numerous instances of injuries accidently caused qualifies them to express with reasonable probability that a particular injury or group of injuries to a child is not accidental or is not consistent with the explanation offered therefor ..."

*Tanner,* 675 P.2d at 542. Our Supreme Court has stated that expert testimony is permitted as an aid to the jury where the subject is beyond the knowledge or experience of

*McIntosh,* 291 Pa.Super. at 354, 435 A.2d at 1264; *In the Interest of Tamela Pernishek,* 268 Pa.Super. 447 at 450, 408 A.2d 872 at 873 (1979).

the average layman. *See Commonwealth v. O'Searo,* 466 Pa. 224, 352 A.2d 30 (1976).

The diagnosis of battered child syndrome is used in connection with young children and is based upon a finding of multiple injuries in various stages of healing, primarily multiple fractures, soft tissue swelling or skin bruising. Also pertinent to the diagnosis is evidence that the child is generally undernourished, with poor hygiene, and that the severity and type of injury is inconsistent with the story concerning the occurrence of the injuries offered by the parents or others who were caring for the child. *See Henson,* 33 N.Y.2d 63, 349 N.Y.S.2d 657, 304 N.E.2d 358 (1973); *Tanner,* 675 P.2d 539 (1983); *see generally* 2 Am. Jur.Proof of Facts 2d, *Child Abuse—The Battered Child Syndrome* (1974).

■ When a qualified expert witness testifies that a particular child suffered from the syndrome, he or she is giving an opinion as to the means used to inflict the particular injuries based on his or her deduction from the appearance of the injuries—the types of injuries, their size, number, location and severity. The battered child syndrome simply indicates that a child found with the type of injuries described above has not suffered those injuries by accidental means. *See* Annot. 98 A.L.R.3d 306 (1980). The expert's testimony on the syndrome is not an opinion regarding the culpability of any particular defendant. Such testimony is not accusatory but, as previously stated, the testimony merely tends to show that the child was intentionally, rather than accidentally, injured. *See Jackson,* 18 Cal. App.3d 504, 95 Cal.Rptr. 919 (1971); *Henson,* 33 N.Y.2d 63, 349 N.Y.S.2d 657, 304 N.E.2d 358 (1973); *Tanner,* 675 P.2d 539 (1983). Additionally, the determination as to the credibility of witnesses is within the sole province of the trier of fact who is free to believe all, part, or none of the evidence. *See Commonwealth v. Guest,* 500 Pa. 393, 456 A.2d 1345 (1983). Defense counsel may challenge the testimony on cross-examination, but such a challenge goes to the weight to be given the testimony, not to its admissibility.

■ We, therefore, conclude that in appropriate factual circumstances, testimony regarding the battered child syndrome is admissible when given by a properly qualified expert witness. The admission or exclusion of evidence is a matter committed to the sound discretion of the trial court. *See Commonwealth v. Jackson*, 336 Pa.Super. 609, 486 A.2d 431 (1984). "Moreover, it is basic hornbook law that only relevant competent evidence is admissible at trial." *Id.*, 336 Pa.Superior Ct. at 619, 486 A.2d at 437. Thus, the trial court must determine whether evidence that a child suffered from battered child syndrome is relevant to the factual circumstances of each particular case. This Court has stated that evidence is relevant "if it tends to make more or less probable the existence of some fact material to the case, it tends to establish facts in issue or when it in some degree advances the inquiry and thus has probative value." *Commonwealth v. Shain*, 324 Pa.Super. 456, 462, 471 A.2d 1246, 1249 (1984).

■ In the present case, we find that the trial court properly admitted testimony on battered child syndrome. As an explanation for Anna Mae's injuries, appellants claimed that the child "bruised easily," "would throw a fit," and that some of the bruises were caused by the administration of cardiopulmonary resuscitation on the child. Dr. Catherman testified that the nature of Anna Mae's injuries was not consistent with appellants' assertions that they were accidental or self-inflicted. The doctor also testified that:

What I observed was injuries about her body that were in various stages of development, that is from the old, well-healed, in the distant past, rib fracture, to the healing area of laceration and abrasion and contusion over the back of the head, with evidence of some reinjury underneath it, to the bruises that were on the surface of the body, which were of a day or two, at most, in age, to injuries of very recent or fresh origin.

488

(N.T. April 30, 1984 at 1092.) We, consequently, find appellants' assertion that the facts of the present case did not fall within the syndrome, to be meritless.

■ Similarly, we find to be meritless appellants' argument that the trial court erred in not instructing the jury that such testimony should be received with great care and caution. The trial court adequately instructed the jury on how to consider the opinion of an expert witness.[5]

5. The trial court instructed the jury, *inter alia,* as follows:
In deciding whether or not to accept an expert's opinion you should consider the evidence as to his training, education or experience, as well as the reasons and facts on which his opinion is based.

Also in deciding whether or not to accept an expert's opinion you should bear in mind that you are not bound to accept it merely because it is the testimony of someone having special skill or knowledge.

\* \* \* \* \* \*

Since the battered child syndrome is a recognized medical diagnosis, Dr. Catherman was permitted to testify concerning the same in order that you, the jury, might be assisted in determining whether the marks on the child's body resulted from an accident or from self-infliction, or whether they were the result of an intentional or grossly reckless or malicious act by someone other than the baby Anna Mae Rodgers.

And medical testimony, therefore, on the battered child syndrome is admissible in a court of law in order to, for you to assess, to see whether it enables you to draw a rational inference that the child's injuries were not accidental or self-inflicted.

But in that regard, ladies and gentlemen, I tell you that with respect to the expert testimony concerning the battered child syndrome, you may only accept such testimony if you believe, first of all, that the expert is properly qualified and if you believe that the underlying facts support his conclusion. If you find from the evidence, and it's entirely up to you ...

\* \* \* \* \* \*

If you find that the facts which were assumed by the expert in forming his opinion with respect to the battered child syndrome are not supported by the evidence, then you should, accordingly, disregard the opinion in its entirety.

\* \* \* \* \* \*

In deciding which of these opinions to accept, if any, you should consider which of the two experts is better qualified by training, education or experience, to give an opinion in this case, and you should also consider the reasons and facts on which each opinion is based.

Where there is a conflict in the testimony you, the jury, have the duty of deciding which testimony to believe, but you should first try to reconcile, that is to fit together, any conflicts in the testimony if you can fairly do so.

(N.T. May 3, 1984 at 1917–1922.)

■ We further find that by admitting testimony on battered child syndrome the trial court did not usurp the role of the jury on deciding an ultimate issue. As our Supreme Court explained in *Commonwealth v. Daniels,* 480 Pa. 340, 390 A.2d 172 (1978):

> As applied to the expression of an expert's opinion, the phrase "usurping the function of the jury" is, as Dean Wigmore has well said, normally "a mere bit of empty rhetoric." VII Wigmore, Evidence Sec. 1902, at 17 (3d ed. 1940). "... (T)he witness, in expressing his opinion, is not attempting to usurp the jury's function; nor could he if he desired.... He could not usurp it if he would, because the jury may still reject his opinion and accept some other view ..." *Id.* at 21. The contention that an expert should never be permitted to express an opinion on an "ultimate issue" is similarly misconceived. "(E)ven when the very point in issue is to be spoken to, the jury should have help if it is needed." *Id.* Sec. 1921, at 18. Pennsylvania cases, which recognize that the central inquiry is whether the proffered opinion will be helpful to the trier of fact in reaching a decision, are in accord. *Reardon v. Meehan, supra,* 424 Pa. [460] at 464–66, 227 A.2d [667] at 670–71 [1967]; *Auerbach v. Philadelphia Transportation Co.,* 421 Pa. 594, 604–05, 221 A.2d 163, 170–71 (1966); *Commonwealth v. Nasuti, supra,* 385 Pa. [436] at 443, 123 A.2d [435] at 438 [1956]; *Cooper v. Metropolitan Life Ins. Co.,* 323 Pa. 295, 186 A. 125 (1936). *Compare Taylor v. Fardink,* 231 Pa.Super. 259, 331 A.2d 797 (1974). *See also* Fed.R.Evid. 704, and Advisory Committee's Note thereto; Model Code of Evidence Sec. 904.

*Id.,* 480 Pa. at 352, 390 A.2d at 178 (footnote omitted). Dr. Catherman's testimony, in the instant case, was helpful to the jury's understanding of the nature, extent, and severity of Anna Mae's injuries, and was, accordingly, an appropriate subject for expert opinion.

490

For the foregoing reasons, we find that the trial court properly admitted expert testimony on battered child syndrome.

Appeal dismissed in part. Judgments of sentence affirmed.