**STATE of Delaware,**

v.

**Joseph T. SCREPESI, Defendant.**

Superior Court of Delaware,
Sussex County.

Submitted: Aug. 15, 1991.
Decided: Aug. 15, 1991.

John R. Garey, Dept. of Justice, Georgetown, for the State.

Sidney Balick, Sidney Balick & Associates, Wilmington, for defendant Joseph Screpesi.

## MEMORANDUM OPINION

LEE, Judge.

On June 26, 1991, a jury of twelve returned a guilty verdict against defendant Joseph T. Screpesi on a single charge of Assault in the Second Degree, a violation of 11 *Del.C.* § 612(1).[1] Pending before the Court is defendant's motion for a new trial.

## FACTS

On March 11, 1991, defendant was indicted on the charge of Assault Second Degree, and the indictment read:

"JOSEPH T. SCREPESI on or about the 26th day of August, 1990, ... did intentionally cause serious physical injury to another person, Michael Screpesi, to wit: did twist his left leg causing a fracture to the femur in violation of Title 11, Section 612(1) of the Delaware Code."

The victim, Michael Screpesi, is the son of defendant and his wife, Lisa. Michael,

---

1. In 11 *Del.C.* § 612(1), it is provided: "A person is guilty of assault in the second degree when:

(1) He intentionally causes serious physical injury to another person...."

who was born July 9, 1990, was seven (7) weeks old at the time of the injury.

No dispute exists that on August 26, 1990, Michael suffered a fracture to his left femur (thigh bone) while he was at home alone with defendant. Disputed, however, was how the injury occurred. The State contended defendant intentionally inflicted the injury on Michael. Defendant maintained the injury was accidental.

Defendant's explanation at the trial of how Michael suffered the injury was the following. He put Michael into a child swing. Defendant propped Michael up with towels and put his feet over the top. The swing did not have a safety belt. Defendant then put out the dogs' food. One of the dogs, Bear, a husky shepherd, went under Michael's swing. Michael flew up in the air; Defendant grabbed for Michael and caught him in mid-air. However, Michael ended up hitting the coffee table because defendant heard a thud. Michael screamed for about five (5) minutes and then did not cry anymore.

Defendant did not tell his wife about the incident when she returned from picking up a pizza. However, the next morning, when Mrs. Screpesi was bathing Michael, she saw something was wrong with Michael's leg. She showed the leg to defendant, who then told her about the swing incident.

Defendant became scared because he knew that any doctor was "going to see child abuse." Volume A of the Trial Transcript at page 19.[2] Consequently, defendant convinced his wife to agree they would say she was in the shower when the incident occurred. The record evidences defendant told the medical personnel and State authorities varying versions of the facts involving and surrounding the injury's occurrence.

The evidence established that Michael had suffered various broken bones in his legs prior to suffering the broken femur. The existence of these prior breaks was not established until Michael was taken to the hospital for x-rays when he suffered the broken left femur.

Testimony also established Michael previously had been taken to the hospital on August 6, 1990, when he had swollen legs. Mrs. Screpesi testified the swelling appeared about two (2) days after Michael had fallen off the couch. Although x-rays were taken, no one noticed, until after the August 26, 1990 incident, that these x-rays evidenced broken bones in Michael's legs.

References at trial to these prior injuries and to "child abuse" are important to this motion; consequently, I outline these references below.

Defendant filed no motion *in limine* regarding the admissibility of these prior injuries or seeking to exclude the term "child abuse."

From the opening statements on, defendant, through counsel, and the State referred to these prior injuries. The following excerpt from defense counsel's opening statements provides insight into defendant's trial strategy:

"A child's bones are brittle, as I'm sure you are all aware. . . .

In the course of those x-rays, they found what the doctors will explain—and I am not going to try to explain—but what appeared to be old healing fractures. Again, it is very difficult for anybody to tell you how these occurred. One possibility is that they occurred when the child fell off its mother's body onto the floor. That is the incident . . . that had happened approximately August 4th and for which they took the child into Beebe Hospital on August 6th.

I don't believe the State is going to suggest to you that those were intentionally caused by anyone. The charge is that the intentional act that Joe is charged with is a twist to the left leg causing a fracture to the femur. The old healed fractures that they found were to the tibia and fibular, which is the lower part of the legs." TA at 17.

Dr. Joseph Black, an emergency room physician at Beebe Hospital, to where the

---

**2.** Hereinafter, Volume A of the trial transcript will be referred to as TA; Volume B will be referred to as TB; and Volume C will be referred to as TC.

Screpesis took Michael on August 27, 1990, testified for the State. His testimony contains references to the discovery of the prior injuries. He explained the injury to the femur plus discovery of the prior injuries led him to suspect child abuse. Defendant never objected to any portion of Dr. Black's testimony, and in fact, questioned him regarding those prior injuries.

Dr. James W. Lockhart, Jr., a radiologist at Beebe, also testified for the State. Dr. Lockhart testified regarding the x-rays taken on August 6, 1990 and August 26, 1990. Defendant did not object to his testimony regarding the prior injuries as seen on the x-rays from both dates.

Defendant did not object to any of Dr. Lockhart's testimony. In fact, defense counsel questioned Dr. Lockhart regarding these prior injuries and elicited from him the response that the prior injuries were "a common form of injury in child abuse where these twisting injuries occur." TA at 88.

Dr. Lockhart testified that the prior injuries were caused by another person, and that the injury to the femur may have been caused by another person or it may have been accidental. Dr. Lockhart agreed it was possible the broken femur could have occurred as explained by defendant.

Later in the trial, the State called Dr. Mark Finklestein, a pediatric radiologist. Dr. Finklestein began by explaining his work in the area of child abuse. Defendant objected to the multiple references to child abuse. TB at 22–23. The Court, in allowing the question, explained its ruling and cautioned the jury as follows at TB at 23:

"Well, the allegation certainly is assault against the child. I don't think the term is inappropriate here. Clearly, we have a unique situation which you're addressing. A minor child cannot testify and, therefore, it is necessary to resort to the medical tests and the expertise that's involved here.

I will ask the jury to understand that no one here suggests that anyone approves of physical abuse of children. The question here, one, is the nature of these inquiries and the cause of the injuries and the use of the term 'child abuse' should not in any way be used to influence the jury or in any way weigh the scales of justice in favor of one side or another."

Later in his testimony, Dr. Finklestein showed and explained slides which depicted varying factors for which a physician examines in determining whether injury to a child is accidental as opposed to intentional and in determining the age of the injuries. Defendant's objections to the slides and testimony thereon as being irrelevant and alternatively, prejudicial were overruled.

Dr. Finklestein began testifying regarding Michael's prior injuries and the broken femur. This testimony began at TB at 61. At TB at 75, defendant objected to a question regarding the cause of the prior injuries on the ground those injuries were irrelevant. The Court overruled the objection.

At TB at 84, Dr. Finklestein was asked if he had formed an opinion as to the causes of the fractures. Defendant objected on the ground of relevancy. The Court overruled the objection, and admonished the jury as follows:

"... [W]hile the existence and causes of other fractures may be relevant in terms of determining whether or not the injury in question was intentional or was part of some pattern, that the only injury that you are concerned with, the only injury for which this defendant is charged with having criminally caused, is the injury to the femur.

However, we have allowed this other testimony not in any way to reflect on the individual or to somehow accumulate evidence of other offenses to show guilt in this, but to elicit questions concerning the intentionalness or whether or not there was a pattern of conduct here that would suggest that this was not accidental."

Dr. Finklestein opined that an outside source caused the injury to Michael's femur. TB at 78. He agreed it could have happened as defendant maintained. TB at 91–92. However, he explained that if it

had occurred that way, defendant would have heard a loud pop and would have seen the deformity immediately. TB at 118.

In its closing, the State stated the jury would have to determine how the "breaks" occurred. TC at 64. Defendant objected, and the Court admonished the jury that the charge was for the one break and the other breaks could be considered only for the limited purpose as instructed. TC at 65.

The Court charged the jury in part as follows:

> "In certain instances, evidence may be admitted for a particular purpose only and for no other. Several doctors were permitted to testify that Michael Screpesi suffered numerous leg fractures. They expressed a number of opinions involving the injury in question as well as previous fractures. Each doctor testified as to different aspects and expressed opinions including the causes of these injuries and the degree of force and the nature of action required to cause them. This testimony was permitted in order that you, the jury, might be assisted in determining whether the injury charged resulted from an accident, or was the result of an act, intentional or unintentional, by another person.
>
> The testimony concerning previous fractures may only be considered as evidence for the purpose of helping you determine whether the baby was intentionally injured rather than injured by an accident and you must not consider it as evidence for any other purpose." TC at 111–12.

## DISCUSSION

Defendant has moved for a new trial. The grounds therefore are threefold: 1) the references to the prior injuries and to the patterns of "child abuse" violated various evidentiary rules, and consequently denied defendant the right to a fair trial; 2) this Court improperly excluded the testimony of Dr. Frederick Kozma to the effect that defendant did not have the personality of a child abuser; and 3) there was insufficient evidence from which the jury could conclude defendant was guilty of the crime charged. I now will address each of these arguments.

1) *References to Prior Injuries and Child Abuse.*

■ Defendant maintains the references to the prior injuries violated Rules 401, 403, and 404(b) of Delaware's Uniform Rules of Evidence (hereinafter, referred to as "D.R.E. ____"). D.R.E. 401 allows the admissibility of relevant evidence. D.R.E. 403 prohibits prejudicial evidence. D.R.E. 404(b) provides:

> "Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident."

It is the asserted violation of this latter rule which defendant most strenuously argues entitles him to a new trial. He maintains that in order for evidence of prior injuries to have been admitted, then this Court had to have followed the guidelines regarding admissibility of prior bad acts as set forth in *Getz v. State*, Del.Supr., 538 A.2d 726 (1988).

■ Defendant's objections will be addressed at a later point. At this time, however, the Court will address the references to prior injuries and child abuse to which defendant made no objection in the context of plain error. Absent plain error, a party who failed to object waives his right to raise the alleged error as an issue. *Wainwright v. State*, Del.Supr., 504 A.2d 1096, 1100 (1986), *cert. den.*, 479 U.S. 869, 107 S.Ct. 236, 93 L.Ed.2d 161 (1986).

> "Plain error 'assumes oversight,' resulting in error jeopardizing the fairness of the trial. *Cf. Tucker v. State*, Del.Supr., 564 A.2d 1110, 1118 (1989); *Wainwright v. State*, Del.Supr., 504 A.2d 1096, 1101 (1986); *Walton v. State*, Del.Supr., 407 A.2d 535, 536 (1979). A claim of plain error does not lie by a party to salvage a trial tactic that has backfired."

*Judkins v. State,* Del.Supr., 574 A.2d 263 (1990) (reported as decision without published opinion).

In this case, even assuming error in the admissibility of the now-questioned evidence, there could be no plain error. Defendant deliberately chose to allow in the references to the prior injuries and child abuse. Defendant, through counsel, referred to these prior injuries from the opening until the closing statements. Defendant did not think, initially, the State would show these injuries were intentionally caused, and defendant attempted to explain the prior injuries in several ways. Defendant sought to explain the prior injuries in a way that would help explain the injury for which he was charged: Michael had brittle bones. Alternatively, defendant tried to attribute those prior injuries to Michael having fallen off the couch, then maintain the second accident was a fluke, and then argue the doctors jumped to incorrect conclusions and unjustly accused him of child abuse. Defendant consciously undertook a trial tactic regarding the admissibility of the evidence of prior injuries, a tactic he rejected when Dr. Finklestein began testifying. Since defendant's failure to object was conscious, he may not avail himself of the doctrine of plain error. *Judkins v. State, supra.*

When Dr. Finklestein began testifying, defendant's trial strategy changed. For the first and only time, defendant objected to the use of the term "child abuse". The Court provided a cautionary instruction and allowed the use of the term as a means by which the doctor could refer to what in most other jurisdictions is labelled battered child syndrome ("BCS").

Dr. Finklestein, as well as Drs. Black and Lockhart, testified regarding BCS, although that term never was used. BCS is an accepted medical diagnosis that a young child has suffered a certain type of injury intentionally rather than accidentally. *State v. Moyer,* 151 Ariz. 253, 727 P.2d 31, 33 (1986); *People v. Jackson,* 18 Cal. App.3d 504, 95 Cal.Rptr. 919, 921 (1971); *State v. Goblirsch,* 309 Minn. 401, 246 N.W.2d 12, 15 (1976); *Com. v. Rodgers,* 364 Pa.Super. 477, 528 A.2d 610 (1987), *alloc. den.,* 518 Pa. 638, 639, 542 A.2d 1368 (1988). The doctor does not provide his opinion that the defendant has done anything; the opinion merely indicates the child was injured intentionally, not accidentally. *State v. Moyer, supra; People v. Jackson, supra; Com v. Rodgers, supra,* 528 A.2d at 614. In this case, not one of the doctors testified the defendant, or anyone for that matter, inflicted the prior injuries.

The Courts of the States in the above-cited cases have ruled this medical testimony is admissible. In a list not intended to be exhaustive, the various state courts in the following cases have admitted testimony regarding BCS: *State v. Dumlao,* 3 Conn.App. 607, 491 A.2d 404 (1985); *People v. Ellis,* 41 Colo.App. 271, 589 P.2d 494 (1979); *People v. DeJesus,* 71 Ill.App.3d 235, 27 Ill.Dec. 448, 389 N.E.2d 260 (1979); *State v. Wilkerson,* 295 N.C. 559, 247 S.E.2d 905 (1978); *Ashford v. State,* Okla. Crim.App., 603 P.2d 1162 (1979); *State v. Best,* 89 S.D. 227, 232 N.W.2d 447 (1975); *State v. Tanner,* Utah Supr., 675 P.2d 539 (1983). The testimony here establishing the foundation for and the ultimate opinion that the broken femur was intentionally inflicted was admissible.

Defendant maintains in his motion for a new trial the doctors' testimony consisted of evidence regarding prior bad acts, and thus, an analysis under *Getz v. State, supra,* had to have been made. I note as an aside that defendant never objected at trial to the introduction of prior injuries on the ground it violated D.R.E. 404(b). The doctors needed to describe these prior injuries to make their diagnosis. These descriptions did not implicate any wrongdoing by the defendant. *People v. DeJesus, supra,* 27 Ill.Dec. at 449, 389 N.E.2d at 261; *State v. Tanner, supra* at 545. D.R.E. 404(b) does not apply in this case, and defendant's argument is misplaced.

Here, after the Court found the evidence of prior injuries was admissible and relevant, it precluded the chance of it being unduly prejudicial by way of limiting in-

structions. *Cf. Com v. Rodgers, supra,* 528 A.2d at 615 n. 5.

In conclusion, this Court holds defendant is not entitled to a new trial on the ground references to prior injuries and child abuse were improperly admitted.

### 2) *Exclusion of Dr. Kozma's Testimony.*

■ Defendant had planned to call Dr. Frederick Kozma, and the State moved that his testimony be ruled inadmissible. Dr. Kozma is a psychiatrist who had tested and interviewed the defendant, and who would have testified that defendant does not appear to have characteristics that are likely to result in abuse of Michael. Defendant maintained he was entitled to present that testimony to contradict the alleged picture the State had painted of him as a child abuser. The Court excluded this testimony.

A difference exists between establishing abuse occurred and depicting someone as a child abuser. *See State v. Durfee,* Minn. Supr., 322 N.W.2d 778 (1982); *State v. Tanner,* Utah Supr., 675 P.2d 539 (1983). The State did not paint the defendant as a child abuser and thus, defendant had no basis for presenting testimony rebutting such a depiction.

■ Furthermore, the testimony proffered was opinion testimony on defendant's character. The applicable rule is D.R.E. 405(a), which provides in pertinent part:

"In all cases in which evidence of character of a person is admissible, proof may be made by testimony as to reputation."

■ In Federal Rules of Evidence 405(a), the first part of 405(a) is identical to that of D.R.E. 405(a), except after "reputation", there appears the phrase "or by testimony in the form of an opinion." D.R.E. 405(a) tracked the federal rule with the omission of the above-noted phrase. Comment to D.R.E. 405(a). I discern an intentional decision that Delaware courts exclude opinion testimony on character.

Dr. Kozma's testimony was opinion testimony on character. As such, it was inadmissible, and defendant's motion for a new trial on this ground fails.

### 3) *Insufficient Evidence to Support the Guilty Verdict.*

■ Defendant's final argument is insufficient evidence existed from which a jury could have reached a guilty verdict. The State's case consisted solely of circumstantial evidence. The standard for determining the sufficiency of circumstantial evidence has changed in the last twenty (20) years. *Williams v. State,* Del.Supr., 539 A.2d 164 (1988), *cert. den.,* 488 U.S. 969, 109 S.Ct. 500, 102 L.Ed.2d 536 (1988). The test is, as noted in *Holden v. State,* Del. Supr., 305 A.2d 320, 322 (1973):

"[W]hether the evidence, viewed in its entirety and including all reasonable inferences, is sufficient to enable a jury to find that the State's charge has been established beyond a reasonable doubt."

In this case, it was undisputed that defendant was alone with Michael when the injury occurred. The State established through medical testimony that the broken femur was caused by a person inflicting it. Although the doctors testified it was possible, but improbable, the broken leg could have occurred as defendant testified, those opinions were based on the veracity of defendant's explanation of what occurred. If the jury disbelieved defendant's version of the incident, the only valid medical opinions regarding Michael's injuries were that they were intentional.

In conclusion, the circumstantial evidence was sufficient to support a verdict of guilty. *See Williams v. State, supra* at 168.

For the foregoing reasons, defendant's motion for a new trial is denied.