**Salem**

MARTINEZ MAYNARD PRICE

v.

COMMONWEALTH OF VIRGINIA

No. 1454-92-3

Decided August 2, 1994

Counsel

James C. Turk, Jr., Robert M. Jenkins (Stone, Hamrick, Harrison & Turk, P.C.; Jenkins & Jenkins, on briefs), for appellant.

Robert B. Condon, Assistant Attorney General (Stephen D. Rosenthal, Attorney General, on brief), for appellee.

Opinion

**ELDER, J.**—Martinez Maynard Price appeals his conviction for second degree murder in the death of his girlfriend's infant daughter, one-and-a-half-year-old Deemechan Peoples. On appeal, he contends that the trial court (1) abused its discretion in admitting the expert opinion testimony of Dr. Scott that the infant was a victim of battered child syndrome; and (2) erred in holding that the evidence was sufficient to support a finding of malice. For the reasons that follow, we affirm appellant's conviction.

## I.

Deemechan Peoples died on July 4, 1991, as a result of a severe blow to the abdomen received twelve to forty-eight hours earlier. The evidence showed that Deemechan's mother, Sara Peoples, began dating appellant in April 1991, after which time appellant frequently cared for the infant while the infant's mother was in school or playing bingo. Prior to that time, Deemechan had been a normal, healthy child whose only illnesses were those normally associated with children of her age.

On May 30, 1991, Peoples took Deemechan to her pediatrician, whose nurse noted a bruise on the infant's left ear and another on the side of her back. Peoples reported that the infant had fallen off a couch while in appellant's care. On June 2, Peoples took Deemechan to the emergency room because her ear was bleeding. The examining physician diagnosed the infant as having an ear infection but testified at trial that she could not rule out the possibility that the bleeding was caused by a skull fracture. On June 6, Peoples again brought Deemechan to the emergency room for treatment of unexplained blisters on one of her toes. On June 26, Peoples took the infant to the emergency room for treatment of a fractured leg, which had to be put in a cast. Appellant testified that the injury might have occurred when another child fell on Deemechan's leg, but two medical experts reported that Deemechan's injury, which was a spiral fracture, could not have been caused by a direct blow and was more likely caused by extreme twisting by some overwhelming outside force.

On July 2, 1991, Peoples left Deemechan with appellant for about one-and-a-half hours in the afternoon. Peoples's former sitter, Louise Kanode, watched the infant that evening. Deemechan vomited periodically throughout the evening and into the next day. Peoples took her to the pediatrician, who diagnosed her as having a throat infection. Peoples left Deemechan with appellant that evening. When she came home, appellant reported that he had slipped and fallen with the child in his arms. Peoples took her to the emergency room where she died.

Following Deemechan's death, appellant told police that he had fallen with the infant on the night she died, after slipping in her vomit. He added, however, that she fell on top of him and sustained no injuries and that he had never "done anything to cause

any injuries to the child." Several days later, however, he admitted that he thought this fall, although accidental, was what caused Deemechan's fatal stomach injuries. At trial, appellant admitted that he fell while holding the child on two different occasions—on July 1, when he tripped on the telephone cord, and on July 2, the night she died, when he slipped in her vomit.

The medical examiner testified that the cause of Deemechan's death was a blow to the abdomen, so severe that her internal organs were crushed against her spine. The examiner estimated that the blow was received twelve to forty-eight hours before the infant's death. She had other injuries around her face and head, which he thought had been received contemporaneously. Although he admitted that all of these injuries could have resulted from an accidental cause such as a fall, he opined that they were the result of several different blows or impacts. The autopsy also revealed that the infant had a blood alcohol content of .02 percent ethyl alcohol.

Over appellant's objection, the Commonwealth presented testimony from Dr. Morgan Scott regarding battered child syndrome. In response to a lengthy hypothetical question based on facts in evidence through the testimony of earlier witnesses, Scott testified that the physical injuries sustained by Deemechan in the spring of 1991 "collectively point to a very medically probable child abuse, such as the battered child syndrome." He explained that he drew these conclusions based on his review of the child's medical records and autopsy report, which were in evidence. He admitted that he had not interviewed the infant's family members or other people who cared for her and that he had not actually examined the child or talked to her health care providers. He expressed no opinion as to the identity of the abuser.

The trial judge sustained appellant's motion to strike the first degree murder charge. The jury convicted appellant of second degree murder.

II.

A.

Appellant contends that the trial court abused its discretion in admitting Dr. Scott's testimony that the infant was a victim of battered child syndrome. "In general, a witness who by education,

training or experience has knowledge beyond that of most lay men, may be qualified before the court as an expert witness and allowed to state an opinion to the factfinder on matters not within their common knowledge or experience." *Callahan v. Commonwealth*, 8 Va. App. 135, 138, 379 S.E.2d 476, 478 (1989). "A trial court will not be reversed for allowing a witness to testify as an expert unless it appears clearly that he was not qualified in the field in which he gives evidence. The question of qualification is largely in the discretion of the trial judge." *Lynchburg Foundry v. Tune*, 1 Va. App. 295, 299, 338 S.E.2d 645, 647 (1986). "The fact that an expert's . . . methods and determinations are challenged or contradicted .·. . does not render inadmissible expert opinion based on those . . . methods and [determinations]. Those challenges and contradictions go to the weight of the evidence, not its admissibility, and raise factual questions to be determined by the jury." *Hubbard v. Commonwealth*, 12 Va. App. 250, 255, 403 S.E.2d 708, 710 (1991), *aff'd*, 243 Va. 1, 413 S.E.2d 875 (1992).

■ An expert in a criminal case "may give an opinion based [only] upon his own knowledge of facts disclosed in his testimony or . . . upon facts in evidence assumed in a hypothetical question," *Simpson v. Commonwealth*, 227 Va. 557, 565, 318 S.E.2d 386, 391 (1984) (quoting *Walrod v. Matthews*, 210 Va. 382, 388, 171 S.E.2d 180, 185 (1969)), but the witness may not express an opinion as to the ultimate issue to be determined by the trier of fact. *Davis v. Commonwealth*, 12 Va. App. 728, 731, 406 S.E.2d 922, 923 (1991).

■ We conclude, as have the courts of many other states, that these principles apply to expert medical testimony concerning battered child syndrome just as they do to any other expert medical testimony. *See, e.g., State v. Moyer*, 727 P.2d 31, 33-34 (Ariz. Ct. App. 1986); *State v. Dumlao*, 491 A.2d 404, 409-10 (Conn. App. Ct. 1985); *Commonwealth v. Rodgers*, 528 A.2d 610, 613-14 (Pa. Super. Ct. 1987); *State v. Lopez*, 412 S.E.2d 390, 393 (S.C. 1991); *State v. Tanner*, 675 P.2d 539, 543-44 (Utah 1983); *see also Estelle v. McGuire*, 112 S. Ct. 475, 480-81 (1991) (holding that admission of expert testimony concerning battered child syndrome to show intent did not violate due process, even though defendant did not contest this point, because intent was element of crime). *See generally* Milton Roberts, Annotation, *Admissibility of Expert Medical Testimony on Battered Child Syndrome*, 98

A.L.R.3d 306 (1980 & Supp. 1993). "The finding of battered child syndrome . . . is made based on a number of physical findings which are inconsistent with the history of the injuries given by the parents or caretakers." *Lopez*, 412 S.E.2d at 393. Furthermore, "[t]he expert's testimony on the syndrome is not an opinion regarding the culpability of any particular defendant. . . . [It] merely tends to show that the child was intentionally, rather than accidentally, injured." *Rodgers*, 528 A.2d at 614.

After review of the record, we hold that the trial court did not abuse its discretion in admitting Dr. Scott's testimony. The evidence supports the court's finding that Scott was qualified as an expert based on both his professional training and professional experiences with physically abused children. Scott provided testimony as to his medical background, explaining that he had been a physician for forty-six years and a psychiatrist for thirty-three. He testified that he first heard the term "battered child syndrome" in 1962 when Dr. Selvin Smith published a book on the subject. Scott also read a second book on the subject written by Smith and attended several seminars on the subject conducted by Smith. Scott testified that prior to using the term "battered child syndrome," the medical profession referred to children who had suffered injuries or death due to a pattern of repeated injury from a caretaker as "abused children." He also reported that he had been personally involved in at least forty to fifty child abuse cases over the years and had testified in over thirty cases in four jurisdictions, including Virginia. He explained that, in rendering an opinion as to whether physical abuse had occurred, he "heavily rel[ies] on the other doctors who examined the child . . . [and] on the history obtained from the family and the examination [of] the child."

Under the facts of this case, we hold that the trial court did not abuse its discretion in concluding that Dr. Scott was qualified to give expert testimony as to whether the deceased infant had suffered from a pattern of intentional physical abuse referred to as battered child syndrome.

We reject appellant's argument that Scott lacked a sufficient factual basis for rendering an opinion in this case. As stated above, an expert may give an opinion based *either* on his own knowledge of facts disclosed in his testimony *or* on facts in evidence assumed in a hypothetical. The hypothetical posed to Scott,

which contained a lengthy recital of facts already admitted into evidence through the testimony of other witnesses, clearly complied with this latter requirement. Once this threshold requirement had been met, any further challenge to the basis of Scott's knowledge went to the weight to be given his testimony by the jury, not to its admissibility. The record showed that Scott, who had significant training and experience in this field, had reviewed the autopsy report, medical records, and photographs of the deceased child's injuries before rendering his opinion. Whether Scott's opinion had been unfairly influenced by the Commonwealth went to the weight of his evidence and was for the jury to decide.

Scott's testimony did not improperly invade the province of the jury to determine an ultimate issue of fact. Dr. Scott did not testify that appellant was the criminal agent. *See Dumlao*, 491 A.2d at 410; *Rodgers*, 528 A.2d at 614. Significantly, Dr. Scott's opinion was based on consideration of a series of injuries received by the victim when he testified that "these [injuries] collectively point to a very medically probable . . . battered child syndrome." Dr. Scott made clear that "a syndrome is a collection of symptoms, not just one (1) thing." Dr. Scott defined battered child syndrome as "[a] collection of signs and symptoms which point toward abuse . . . by another person."

Obviously, Dr. Scott's opinion was not based on one injury. He did not testify that any specific injury was intentionally inflicted, merely that a pattern existed which supported his conclusion that the child suffered from battered child syndrome. In fact, on cross-examination he was asked, "You can't state that this man . . . abused that child intentionally, can you?" Dr. Scott replied, "No, . . . the signs and symptoms are typical of a battered child syndrome."

We also hold that the trial court did not abuse its discretion by ruling that Dr. Scott's evidence of the battered child syndrome was more probative than prejudicial. *See Wise v. Commonwealth*, 6 Va. App. 178, 188, 367 S.E.2d 197, 203 (1988). The Commonwealth bore the burden of proving intent in this case, *see Estelle*, 112 S. Ct. at 481, and appellant directly contested the sufficiency of the evidence on this point. In the appellant's pretrial statement and testimony at trial, he insisted that the injuries sustained by Deemechan while in his care, including the fatal one, were acci-

dental. Thus, we hold, as did the Supreme Court of Utah in *Tanner*, that as long as the term is not applied broadly or as a generalization and the expert can testify in detail as to the nature of the child's physical injuries and whether the explanations given for them are reasonable, the testimony is not overly prejudicial. *Tanner*, 675 P.2d at 543-44. Any purported deficiencies in the testimony go to the weight to be given it by the jury, not to its admissibility. *Id.* at 544.

### B.

█ Appellant contends that the evidence was insufficient to show he acted with the express or implied malice necessary to support his conviction for second degree murder. *Pugh v. Commonwealth*, 223 Va. 663, 668, 292 S.E.2d 339, 341 (1982). "Express malice is evidenced when 'one person kills another with a sedate, deliberate mind, and formed design.' Implied malice exists when any purposeful, cruel act is committed by one individual against another without any . . . provocation." *Id.*

█ In considering this assignment of error, "we must view all the evidence in the light most favorable to the Commonwealth and accord to the evidence all reasonable inferences fairly deducible therefrom. The jury's verdict will not be disturbed on appeal unless it is plainly wrong or without evidence to support it." *Traverso v. Commonwealth*, 6 Va. App. 172, 176, 366 S.E.2d 719, 721 (1988). It is also within the province of the jury to judge the credibility of the witnesses. *Mullis v. Commonwealth*, 3 Va. App. 564, 571, 351 S.E.2d 919, 923 (1987). Circumstantial evidence is sufficient to support a conviction as long as it excludes every reasonable hypothesis of innocence. *See McGee v. Commonwealth*, 4 Va. App. 317, 322, 357 S.E.2d 738, 740 (1987); *Johnson v. Commonwealth*, 2 Va. App. 598, 604-05, 347 S.E.2d 163, 167 (1986).

Viewed in the light most favorable to the Commonwealth, the evidence was clearly sufficient to support a finding that Deemechan sustained her fatal injuries while under appellant's care and that the injuries were the result of a deliberate and cruel act rather than an accident. Appellant admitted that the injury occurred while Deemechan was in his care, and the medical evidence confirmed this fact. Expert testimony revealed that a person with this type of injury would have begun to vomit within thirty

minutes to several hours after sustaining the fatal injury and that she would have lived only twelve to forty-eight hours following the injury. The evidence here showed that Deemechan began to vomit early in the evening of July 2, just a few hours after she had been in appellant's care, and that she died about thirty-two hours later.

The medical evidence also supported the conclusion that Deemechan suffered repeated acts of physical abuse between May and July of 1991, shortly after appellant became one of her primary caretakers. Although appellant insisted they were all accidental, Deemechan sustained several of these injuries while in his care. *See Moyer*, 727 P.2d at 32-33 (holding evidence that infant was victim of battered child syndrome and "that the [infant's] injuries occurred while [she] was entrusted to the care of the defendant is sufficient" to support a conviction for felony child abuse). Appellant gave contradictory accounts of how Deemechan sustained her fatal injury, stating at first that he had never done anything to cause injury to the child and later claiming that she was injured accidentally when he fell while carrying her. In its role of judging witness credibility, the jury was entitled to disbelieve appellant's self-serving testimony and to conclude that he was lying to conceal his guilt. *Speight v. Commonwealth*, 4 Va. App. 83, 88, 354 S.E.2d 95, 98 (1987) (en banc). The evidence was, therefore, sufficient to support the jury's finding that appellant acted with malice.

For these reasons, we affirm appellant's conviction.

*Affirmed.*

Coleman, J., and Koontz, J., concurred.