Strafford
No. 93-367

THE STATE OF NEW HAMPSHIRE

v.

THERESA GUYETTE

May 26, 1995

*Jeffrey R. Howard,* attorney general (*Cynthia L. White,* assistant attorney general, on the brief and orally), for the State.

*Judith M. Kasper,* assistant appellate defender, of Concord, by brief, and *Richard C. Guerriero,* public defender, of Keene, orally, for the defendant.

HORTON, J. The defendant, Theresa Guyette, was convicted after a jury trial in the Superior Court (*Fitzgerald,* J.) of first degree assault, RSA 631:1 (1986 & Supp. 1994). On appeal, the defendant argues that the trial court erroneously admitted evidence of prior injuries to the victim and expert medical testimony that the victim suffered from battered child syndrome. We reverse and remand.

On June 26, 1991, the defendant brought her two-year-old son Robbie to the emergency room at Frisbie Memorial Hospital. Robbie had sustained second degree burns on his feet, ankles, legs, buttocks, genitals, and left hand from scalding hot water in a bathtub. The defendant claimed that Robbie burned himself accidentally by turning off the cold water when she was drawing a bath for him. Upon examining the child, physicians at the hospital noticed that the child had other injuries in various stages of healing. Robbie had a triangular burn scar on his abdomen, a large abrasion on his chin and upper back, a laceration over his eye, and bruising to both sides of his face, arms, and back. Skeletal X-rays also revealed seven healing fractured ribs. The defendant was charged with first degree assault and accused of purposely placing Robbie in a bathtub containing scalding water.

Prior to trial, the State moved to admit evidence, under New Hampshire Rules of Evidence 404(b) and 401, of the child's prior injuries and expert medical testimony that Robbie suffered from battered child syndrome. The trial court found that the evidence was inadmissible under Rule 404(b) because the State could not "connect the other injuries to [the] defendant with sufficient specificity" but, nevertheless, allowed admission of the evidence under Rule 401. The court reasoned:

> [W]hen offered to show that certain injuries are a product of child abuse, rather than accident, evidence of prior injuries is

> relevant *even though it does not purport to prove who might have inflicted those injuries. . . .* The fact that the defendant will rely on the defense of accident and the fact that at least under one theory, the State must prove intent, serves to substantially heighten the probative value of the evidence which the State seeks to introduce.

(Quotation omitted.)

At trial, the State presented extensive medical testimony detailing Robbie's burns and his other prior injuries. Dr. Timothy Donnelly, the physician who treated Robbie at the hospital, testified:

> I was presented with a youngster who had severe bruising about both sides of his face. He looked like he had been beaten up. He—his face was puffy on one side, and he had dark bruises and fresh bruises in kind of a symmetrical pattern on both sides of his face. In particular there was a big mark on the chin.

Dr. Patrick Parks, a radiologist who evaluated X-rays of Robbie's chest, testified that he discovered seven healing fractured ribs and concluded: "[W]hen you see fractures like this [bilateral rib fractures], it means child abuse or abuse, battered child syndrome, whatever term you care to use. It's what they call a sine qua non. If you see that, it's child abuse." Further, the State's Chief Medical Examiner, Dr. Roger M. Fossum, qualified at trial as an expert in child abuse, testified in detail about each of the child's prior injuries, concluding that Robbie was a battered child. He stated: "If one takes each individual injury by itself, one cannot necessarily say that that is due to abusive injury, but the overall pattern of the multiplicity of the injuries in various stages of healing on various parts of the body are . . . indicative of abuse."

■ The sole issue on appeal is whether the trial court erred in admitting evidence of Robbie's prior injuries and expert medical testimony that he suffered from battered child syndrome. Battered child syndrome is an expert medical diagnosis that "a particular injury or group of injuries to a child is not accidental or is not consistent with the explanation offered therefor but is instead the result of physical abuse by a person of mature strength." *State v. Mulder*, 629 P.2d 462, 463 (Wash. Ct. App. 1981); *see also* McCoid, *The Battered Child and Other Assaults Upon the Family: Part One*, 50 MINN. L. REV. 1, 3-19 (1965). Dr. Fossum described the syndrome at trial as follows: "[B]asically it means non-accidental injury of a child. And this can take a variety of forms. . . . Within that syndrome and in particular relating to physical abuse, which is defined as the nonaccidental injury of a child, this covers any and all types of events that can occur to a child that upon evaluation appear not to be of an accidental nature."

 Admissibility of evidence initially depends on relevancy alone. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the fact." N.H. R. Ev. 401. The State argues that the evidence demonstrating battered child syndrome and describing the prior injuries to Robbie was relevant because it tends to prove that "the second-degree scalding burns suffered by the victim were not accidental, but rather were the result of an intentional act." We hold that the evidence of prior injuries to the victim does not meet the threshold requirement of relevancy because the State has failed to connect the evidence to the defendant.

To convict the defendant of first degree assault, the State had to prove that she purposely caused Robbie to sustain second degree burns on his feet, ankles, legs, buttocks, genitals, and left hand by placing him in a bathtub containing hot water. *See* RSA 631:1. The State's expert, Dr. Fossum, testified that Robbie suffered from battered child syndrome and he described Robbie's prior injuries. In his opinion, these prior injuries were themselves evidence of someone's intentional acts. This evidence, alone, is irrelevant unless the prosecution can convince the jury that the defendant is the expert's "someone." *See State v. Smith,* 135 N.H. 524, 527, 607 A.2d 611, 613 (1992); Orfinger, *Battered Child Syndrome: Evidence of Prior Acts in Disguise,* 41 FLA. L. REV. 345, 358 (1989). In other words, evidence that Robbie has sustained prior intentional injuries from someone does not tend to prove, in and of itself, that the defendant purposely or intentionally caused Robbie's injury.

 Nor in a criminal context can we accept the State's premise that the more intentional prior injuries a child has sustained, the more probable that the current injury is intentional or non-accidental. *Cf. State v. Blackey,* 137 N.H. 91, 95, 623 A.2d 1331, 1333 (1993). The State must prove more than that the injury occurred non-accidentally, the State must prove that the injury was caused by the *defendant's* intentional act. *See* RSA 631:1. The only way this evidence can be relevant is if the jury makes an inference that these prior intentional injuries were caused by the defendant. The inferential jump from Robbie's prior intentional injuries to the conclusion that the defendant scalded him on this occasion is seductive, but not logically permissible in the absence of evidence connecting the defendant to the prior injuries. *See State v. Leuthner,* 124 N.H. 638, 640, 474 A.2d 1029, 1030 (1984). By contrast, if the State could prove that there was a nexus between the defendant and the prior intentional injuries, such evidence might be relevant and highly probative of whether the defendant purposely scalded her son. *See* N.H. R. Ev. 404(b).

We realize that other jurisdictions have allowed the admission of evidence of prior intentional injuries in the form of battered child syndrome; however, we are not persuaded by their logic. Without any connection to the defendant, evidence of prior intentional injuries to the child does not tend to prove that the defendant purposely scalded her child. Because the trial court admitted irrelevant evidence detailing the child's prior intentional injuries, we reverse and remand.

*Reversed and remanded.*

All concurred.