951 P.2d 1131 (1998)
134 Wash.2d 570
STATE of Washington, Respondent,
v.
Whitney NORLIN, Petitioner.
No. 63691-5.
Supreme Court of Washington, En Banc.
Argued September 25, 1996.
Decided March 5, 1998.
Reconsideration Denied April 22, 1998.
Washington Appellate Project, Richard Tassano, David L. Donnan, Seattle, for Petitioner.
*1132 Norm Maleng, King County Prosecutor, Francis Zavatsky, Cynthia Gannett, Deputy, Seattle, Theresa Fricke, Tacoma, for Respondent.
ALEXANDER, Justice.
We granted review of a decision of the Court of Appeals, Division One, affirming Whitney Norlin's conviction on a charge of first degree assault of a child. The dispositive issue before us is whether the trial court abused its discretion in admitting, pursuant to ER 404(b), testimony of an expert that the child victim's prior injuries were caused by an intentional act. We hold that, in child abuse prosecutions, evidence of such prior injuries is admissible under ER 404(b) only if the State connects the defendant to those injuries by a preponderance of the evidence. Here, although the trial court admitted the evidence of the victim's prior injuries without making such a preliminary finding, the record establishes the requisite connection. We conclude, therefore, that the trial court properly admitted the evidence and affirm Norlin's conviction.
On June 1, 1993, Norlin and Diana Carpenter brought their three-month-old child, Nicholas, to Overlake Hospital Medical Center (Overlake) in Bellevue. According to a nurse there, Norlin told the hospital's admitting clerk that the baby "had fallen off the couch and [his] eyes rolled back in his head, and the baby wouldn't wake up." Report of Proceedings (RP) at 187. A physician at Overlake examined Nicholas and determined that the child had sustained a severe head injury. The physician then transferred Nicholas to Harborview Hospital in Seattle. Doctors at Harborview immediately performed lifesaving emergency neurosurgery after concluding that Nicholas was suffering from a subdural hematoma. Later in the day, Norlin told an emergency room physician and a social worker at Overlake that the injury for which Nicholas was hospitalized had been caused by a fall from a couch.
The State charged Norlin in King County Superior Court, pursuant to RCW 9A.36.120(1)(b)(i),[1] with first degree assault of a child. Before trial, Norlin made a motion in limine to exclude evidence of several injuries that Nicholas had sustained prior to the incident in question. Norlin claimed in support of this motion that the evidence of prior injuries was inadmissible unless it was tied to him by a preponderance of the evidence. The trial court denied Norlin's motion, concluding that the evidence was relevant and not unduly prejudicial and was, therefore, admissible pursuant to ER 404(b). In doing so it said:
This evidence is logically relevant to the State's burden of proving intent, even if there's no explicit defense of accident. Clearly this inference will be raised from the statements that are put into evidence, and this evidence circumstantially goes to the issue of whether the injury was intentional or accidental. The statements I'm referring to are the statements related to Mr. Norlin and what he said to medical personnel at the hospital, as I understand it.
It's relevant, even though it does not purport to prove the identity of the person who might have inflicted those injuries. It shows the injury was the result of an intentional act by someone and not an accident. Therefore, I believe its probative value outweighs its prejudicial effect.
RP at 135 (emphasis added). The trial court also concluded that the evidence was admissible, on an alternative basis, under ER 703 as "part of what [the experts] are relying on in expressing their opinion related to child abuse." RP at 134.
At trial, Dr. Done, a pediatric radiologist, testified that X-rays taken of Nicholas after the child's admission to the hospital on June 1 revealed that Nicholas had suffered a fractured arm, an ankle fracture, and two rib fractures, all within a three-week period prior to his June 1 hospitalization. Done further *1133 testified that such a "constellation" of injuries was "difficult to explain in any other way than maltreatment or abuse," and that the ankle and rib fractures would by themselves "be enough to diagnose maltreatment or abuse." RP at 269.
Dr. Feldman, a pediatrician, testified regarding both Nicholas's prior injuries and the subdural hematoma for which Nicholas had been admitted to the hospital on June 1. Feldman said that the injury to Nicholas's head was inconsistent with the type of injuries that a child would sustain in falling from a couch, as well as with the symptoms that Norlin described to the admitting clerk at Overlake as having resulted from the fall. When asked if "any history ... would have explained the other injuries," Feldman responded that "two or three other falls off of the same couch" could not have caused the prior injuries. RP at 606. Feldman went on to say, "This constellation of injuries you would not see except in a child who has sustained child abuse, who has been an inflicted injury victim." RP at 607-08. Finally, Feldman stated, "[T]here's nothing to say that the same person inflicted the head injury and the rib injury except then you have to postulate that two people are beating on the kid." RP at 645.
Nicholas's mother, Diana Carpenter, testified that although she, Nicholas's grandparents, and two baby-sitters had each cared for Nicholas at various times during the period in which he sustained the injuries that preceded the incident that caused the subdural hematoma, a major portion of Nicholas's care during this period of time was provided by Norlin alone. Furthermore, Carpenter indicated that Norlin told her that a bruise on Nicholas's back and a red mark over the child's eye resulted from two "incidents," both of which occurred when Norlin was alone with Nicholas.
Norlin testified on his own behalf and stated that the head injury Nicholas suffered on June 1 resulted from the child falling off of a couch. Norlin indicated that after the child fell, he had "shake[n] [Nicholas] around" in an effort to "wake him up." RP at 832. Norlin also testified that on at least four occasions when Nicholas was in his care prior to June 1, the child had fallen and injured himself. He indicated that these falls occurred variously from a porch, changing table, and the couch purportedly involved in the June 1 incident. Norlin admitted that he had been alone with Nicholas on at least three of these occasions.
A jury found Norlin guilty of first degree assault of a child, and he was sentenced to serve a prison term of 110 months. Norlin appealed to the Court of Appeals, Division One, claiming multiple errors by the trial court. That court affirmed his conviction in an unpublished opinion, and in doing so, endorsed the admission of evidence of Nicholas's prior injuries under ER 404(b) without requiring that it be tied to Norlin. He then petitioned this court, seeking review on numerous grounds. We granted review only of the trial court's decision to admit the evidence of prior injuries to Nicholas.

I.
A decision to admit evidence of other crimes or acts "lies largely within the sound discretion of the trial court" and "will not be reversed on appeal absent a showing of abuse of discretion." State v. Laureano, 101 Wash.2d 745, 764, 682 P.2d 889 (1984), overruled on other grounds by State v. Brown, 113 Wash.2d 520, 782 P.2d 1013, 80 A.L.R.4th 989 (1989). Under Washington's rules of evidence, all relevant evidence not barred by constitutional requirements, statute, the Rules of Evidence, or other court rules is admissible. ER 402. Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401.
The State contends here that the evidence of Nicholas's arm, ankle, and rib injuries was relevant and properly admitted under ER 404(b) because it tended to show that Nicholas was injured as the result of an intentional act, as opposed to an accident. The State is correct in observing that evidence of other crimes, wrongs, or acts, although not admissible "to prove the character of a person in order to show action in conformity therewith," *1134 may be admitted to prove such things as motive, intent, identity, or absence of mistake or accident. ER 404(b).[2] Norlin argues, however, that evidence of Nicholas's prior injuries was admissible under that rule only if the State first connected Norlin to the acts causing those injuries by a preponderance of the evidence.
Norlin's contention is supported by the plain language of ER 404(b). We reach this conclusion because the second sentence of ER 404(b), the portion of the rule that allows the admission of such evidence, uses the term "it." Clearly that term refers to the phrase "[e]vidence of other crimes, wrongs, or acts" referred to in the preceding sentence, which prohibits the use of such evidence "to prove the character of a person in order to show action in conformity therewith." Because logic suggests that the only "crimes, wrongs, or acts" that would have any weight as to a defendant's character are those that were committed by the defendant, it follows that the portion of ER 404(b) allowing the admission of such evidence is similarly limited to "crimes, wrongs, or acts" that are tied to the defendant.
Furthermore, our interpretation of ER 404(b) is supported by numerous cases from this court which make clear that evidence of other wrongful acts by a defendant may be admitted pursuant to ER 404(b) only if the State first establishes a connection between the defendant and those acts. See State v. Lough, 125 Wash.2d 847, 852, 889 P.2d 487 (1995); State v. Lane, 125 Wash.2d 825, 834, 889 P.2d 929 (1995); State v. Benn, 120 Wash.2d 631, 653, 845 P.2d 289 (1993); State v. Robtoy, 98 Wash.2d 30, 42, 653 P.2d 284 (1982). The necessary connection between the defendant and the prior act must be established by a preponderance of the evidence. State v. Pirtle, 127 Wash.2d 628, 648-49, 904 P.2d 245 (1995), cert. denied, ___ U.S. ___, 116 S.Ct. 2568, 135 L.Ed.2d 1084 (1996); Robtoy, 98 Wash.2d at 42, 653 P.2d 284 ("The law is well settled in the area of collateral crimes evidence that the other crime must be connected to the defendant, and proof must be by a preponderance of the evidence.") (citing State v. Tharp, 96 Wash.2d 591, 593-94, 637 P.2d 961 (1981)); State v. Binkin, 79 Wash.App. 284, 289, 902 P.2d 673 (1995), review denied, 128 Wash.2d 1015, 911 P.2d 1343 (1996); State v. Toennis, 52 Wash.App. 176, 187, 758 P.2d 539 ("the State must prove both prior acts, and the defendant's connection to these acts, by a preponderance of the evidence"), review denied, 111 Wash.2d 1026 (1988); State v. Hieb, 39 Wash.App. 273, 282-84, 693 P.2d 145 (1984), rev'd on other grounds, 107 Wash.2d 97, 727 P.2d 239 (1986); see also United States v. Houser, 929 F.2d 1369, 1373 (9th Cir.1990); State v. Terrazas, 189 Ariz. 580, 944 P.2d 1194, 1197-98 (1997) (citing cases from 20 jurisdictions which hold that the defendant must be connected to the prior acts by at least a preponderance of the evidence before the acts are admissible under ER 404(b)). The same standard of proof applies when the evidence of the prior act is being used to refute accident or absence of mistake. State v. Roth, 75 Wash.App. 808, 818, 881 P.2d 268 (1994), review denied, 126 Wash.2d 1016, 894 P.2d 565 (1995).
Although the aforementioned cases concern the admissibility of evidence pursuant to ER 404(b), to date this court has not addressed the precise issue before us now: whether evidence of a child victim's prior injuries is admissible under ER 404(b) to show "absence of accident," without first connecting the defendant to those prior injuries?
Division One of the Court of Appeals has answered that question in the affirmative in a case that preceded the instant case and in doing so relied on a theory known as the "doctrine of chances." See State v. Mercer, 34 Wash.App. 654, 663 P.2d 857, review denied, 100 Wash.2d 1005 (1983). In Mercer, the defendant was convicted of second degree murder after evidence was admitted that he had beaten his five-month-old daughter to death. Over the defendant's objection, the trial court also admitted evidence that *1135 the infant had sustained injuries while in the defendant's care, prior to sustaining the blows that led to her death. Although the defendant did not dispute the existence of the prior injuries, he claimed that the earlier injuries, as well as those causing the infant's death, occurred accidentally. In affirming the trial court, the Court of Appeals concluded that the fact the prior injuries may have occurred accidentally was an argument that went to the weight of the evidence, not its admissibility. In doing so, the court rejected the defendant's argument "that the State must first prove it was the defendant who caused the prior injuries before evidence concerning them can be admitted into evidence." Mercer, 34 Wash.App. at 660, 663 P.2d 857. The court went on to note:
It is possible to negative accident or inadvertence, and to infer deliberate human intent, without forming any conclusion as to the personality of the doer. Thus if, one morning after a high wind, A's cellar window is found broken, the pieces lying inside, he may well assume the probability that the force of the wind blew the glass in; but if, on the next morning and the next, he again finds a window broken in the same way, though no high wind prevailed the night before, he gives up the hypothesis of the force of the wind as the explanation, and concludes that a deliberate human effort was the highly probable cause of the breakage, although he can form no notion whatever of the personality of the doer.
Thus it is thus clear that innocent intentaccident, inadvertence, or the likemay be negatived by anonymous instances of the previous occurrence of the same or a similar thing. After the defendant's connection with the deed charged is assumed or proved, his innocent intent may be negatived by such instances, which may have force for that purpose, though they are not connected with the defendant.
Mercer, 34 Wash.App. at 660-61, 663 P.2d 857 (quoting 2 JOHN H. WIGMORE, EVIDENCE IN TRIALS AT COMMON LAW § 303, at 247-48 (Chadbourn rev. 1979)).
The conclusion in Mercer that the defendant need not be tied to the prior injuries in order for evidence of those injuries to be admitted under ER 404(b) runs counter to the numerous Washington cases cited above which require that such a connection be established by a preponderance of the evidence. Furthermore, the secondary authority cited by the court in Mercer as support for its holding that the doctrine of chances allows for the admission of anonymous acts under ER 404(b) actually endorses the view that the defendant needs to be tied to the prior injuries before evidence regarding those injuries can be received by the court. 2 WIGMORE, supra, § 303, at 248 ("The only limitation upon this mode of proof is that the defendant's doing of the act in issue must be shown by other evidence at some stage of the trial; and the anonymous instances should not be received until the trial court is satisfied with the amount of evidence introduced or pledged for showing that connection."); see also 2 JOHN E.B. MYERS, EVIDENCE IN CHILD ABUSE AND NEGLECT CASES § 6.17, at 37 (2d ed. 1992) ("Although anonymous acts are admissible under the doctrine of chances, before anonymous acts are received, the state must establish a connection between the defendant and the injured child or children."). Although it is unclear whether the doctrine of chances provides a basis for admitting such evidence independent of ER 404(b),[3] it is clear that if the State relies on the doctrine as support for the admission of prior injury evidence pursuant to ER 404(b), the State must connect the defendant to those injuries.
In reaching our decision, we take solace from the fact that we are unable to find any instances wherein courts in other jurisdictions have admitted evidence of a child victim's prior injuries to prove absence of accident, pursuant to ER 404(b), absent evidence connecting the defendant to the injuries. On *1136 the other hand, we take note of the numerous cases from other jurisdictions which indicate that evidence of a child's prior injuries is admissible under ER 404(b) only if it is connected to the defendant. See United States v. Boise, 916 F.2d 497, 502 (9th Cir.1990); United States v. Colvin, 614 F.2d 44, 45 (5th Cir.1980); United States v. Brown, 608 F.2d 551, 555, 57 A.L.R. Fed. 950 (5th Cir.1979) (evidence of prior injuries was not admissible under Fed.R.Evid. 404(b) absent proof that the prior injuries resulted from an offense committed by the defendant); United States v. White, 23 M.J. 84, 86 (C.M.A.1986); People v. Oaks, 169 Ill.2d 409, 215 Ill.Dec. 188, 208, 662 N.E.2d 1328, 1348 (admitting evidence of prior injuries to show absence of mistake only if there is proof that the defendant committed or participated in the crime by more than a mere suspicion, but less than beyond reasonable doubt), cert. denied, ___ U.S. ___, 117 S.Ct. 191, 136 L.Ed.2d 129 (1996); Clemens v. State, 610 N.E.2d 236, 242 ("[T]here must be sufficient evidence at trial to support a finding by the jury that the accused committed the similar act for it to be admissible under F.R.Evid. 404(b).") (citing Huddleston v. United States, 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988)) (Ind. 1993); State v. Moorman, 286 N.J.Super. 648, 670 A.2d 81, 87 (1996); State v. Michaud, 135 N.H. 723, 610 A.2d 354, 356 (1992) (requiring that defendant be connected to the prior injuries of the child by "clear proof" before admitting them under ER 404(b)); State v. Pierce, 326 S.C. 176, 485 S.E.2d 913, 914 (1997) ("The testimony regarding Kindal's previous injuries is inadmissible absent a conviction or clear and convincing proof that appellant inflicted the injuries.") (citation omitted).
In short, we find ourselves in agreement with the general view espoused by these courts that evidence of a child victim's prior injuries is admissible to show "absence of ... accident" pursuant to ER 404(b) only if the State connects the defendant to the prior injuries by a preponderance of the evidence. This holding, as we have noted, is consistent with prior cases from this court involving other ER 404(b) exceptions and is, in our view, the only logical construction of the "absence of accident" exception.
In reaching our conclusion that evidence of prior injuries must be tied to the defendant to be admissible pursuant to ER 404(b), we are not unmindful of the contention that evidence of a child's prior injuries may have relevance, notwithstanding its lack of connection to the defendant, on the basis that the evidence could support a conclusion that the intentional act of someone caused the injury that led to the charge. See Estelle v. McGuire, 502 U.S. 62, 71, 112 S.Ct. 475, 481, 116 L.Ed.2d 385 (1991) (Although prior injury evidence is relevant absent a connection to defendant, the Supreme Court's habeas powers do not allow it to determine whether the trial court improperly admitted the prior injury evidence as bad acts evidence.); United States v. Merriweather, 22 M.J. 657, 661 (A.C.M.R.1986); Bludsworth v. State, 98 Nev. 289, 646 P.2d 558 (1982); but see State v. Guyette, 139 N.H. 526, 658 A.2d 1204, 1206 (1995) (prior injury evidence was not relevant under ER 401 absent connection to the defendant). Nevertheless, because the controlling issue before us is whether evidence of prior injuries was properly admitted under ER 404(b), an issue we resolve in favor of the State hereafter, we need not decide whether prior injury evidence is relevant and admissible under some other rule of evidence absent a connection to the defendant.[4]

II.
Having determined that the trial court should not have admitted the evidence of Nicholas's prior injuries pursuant to ER 404(b) absent a connection to the defendant, we must confront the question of whether the requisite connection was established by a preponderance of the evidence. If it was established, we may affirm Norlin's conviction. See Sprague v. Sumitomo Forestry Co., 104 Wash.2d 751, 758, 709 P.2d 1200 (1985) ("It is a general rule of appellate practice that the judgment of the trial court will not be reversed when it can be sustained on any theory, although different from that *1137 indicated in the decision of the trial judge.") (citing Cheney v. City of Mountlake Terrace, 87 Wash.2d 338, 552 P.2d 184 (1976)).
The testimony at trial pointed strongly to Norlin's connection to Nicholas's prior injuries. That testimony showed that Norlin was the person primarily responsible for Nicholas's care in the weeks preceding the incident that led to Norlin being charged. In a tape-recorded interview with the police that was played at trial, Norlin indicated that he baby-sat Nicholas between 40 and 70 hours a week during that time. That being the case, Norlin obviously had ample time alone with Nicholas during which he could have caused the child's injuries.
Furthermore, Norlin described in the police interview other occasions in which Nicholas had "fallen." Norlin told of one incident about three weeks prior to June 1 in which Nicholas fell from a chair on the porch while in his care. Norlin said that Nicholas also took another fall from a couch about a week after the fall from the porch.
Diana Carpenter testified at trial about injuries she saw on Nicholas prior to the June 1 incident. One she described as "a little red mark over his eye." RP at 749. She said that Norlin told her that Nicholas received this head injury when he fell from a baby chair that had been resting on a couch. According to Carpenter, only Norlin was present at the time of this alleged fall. She also described a bruise she saw on Nicholas's back, indicating that Norlin told her that the bruise occurred when Norlin was alone with Nicholas and caught the child as he rolled off a makeshift changing table.
In short, a number of incidents that may well have resulted in the prior injuries that the doctors found Nicholas had sustained prior to the June 1 incident occurred during times when Norlin was alone with the child. Furthermore, there was no evidence at trial that any other person had been alone with Nicholas when these incidents occurred. Neither was there evidence of any other incidents that could have caused the arm, ankle, and rib injuries testified to by the physicians. Although this evidence can only be described as circumstantial, it was sufficient to connect Norlin to Nicholas's injuries by a preponderance of the evidence.
We also hold that the trial court correctly determined that the evidence of Nicholas's prior injuries should not have been excluded under ER 403.[5] ER 403 requires a balancing of probative value against unfair prejudice. State v. Bartholomew, 98 Wash.2d 173, 198, 654 P.2d 1170 (1982), vacated on other grounds, 463 U.S. 1203, 103 S.Ct. 3530, 77 L.Ed.2d 1383 (1983). We will not overrule such a balancing absent an abuse of discretion. State v. Rivers, 129 Wash.2d 697, 710, 921 P.2d 495 (1996); State v. Luvene, 127 Wash.2d 690, 706-07, 903 P.2d 960 (1995).
Here, the probative value of the evidence of the three prior injuries to Nicholas was great. The doctors who testified about the prior injuries relied, in part, on the existence of those prior injuries to reach their diagnosis that Nicholas's head injury was not the result of an accident. On the other hand, the prejudicial effect of the evidence was comparatively slight because it was offered to show that Nicholas's subdural hematoma was not the result of an accident, not to indicate that Norlin intentionally inflicted the prior injuries. This was made clear by the trial court's instruction to the jury that it could consider the evidence of Nicholas's prior injuries "only as to whether [it] tend[ed] to prove absence of accident." Clerk's Papers at 38. The trial court did not, in short, abuse its discretion in admitting the prior injury evidence.
In sum, although the trial court did not address the question of whether the State had connected Norlin to the evidence of Nicholas's prior injuries before admitting it, we conclude that the record indicates that such a connection was established by a preponderance of evidence. Accordingly, we affirm Norlin's conviction. Because we find the trial court properly admitted the prior injury evidence pursuant to ER 404(b), it is *1138 unnecessary for us to address the State's contention that the evidence of prior injuries to the child was also admissible under ER 703 and ER 705. Affirmed.
DURHAM, C.J., and SMITH, JOHNSON, MADSEN and SANDERS, JJ., concur.
TALMADGE, Justice, concurring.
The majority opinion with great care anchors its reasoning and its holding solely to ER 404(b), and reaches a conclusion in which I concur. I write separately only to note this case says nothing about the admissibility of battered child syndrome (BCS) evidence; that is, evidence of prior injuries to a child admissible for reasons other than ER 404(b). ER 404(b) does not govern the admissibility of BCS evidence. Thus, the law of Washington regarding BCS evidence continues to reside in the two cases explicitly holding BCS evidence admissible, State v. Mulder, 29 Wash.App. 513, 629 P.2d 462 (1981), and State v. Toennis, 52 Wash.App. 176, 758 P.2d 539, review denied, 111 Wash.2d 1026 (1988).
The first case, Mulder, 29 Wash.App. at 515-16, 629 P.2d 462, said:
[Doctors may testify] with reasonable probability that a particular injury or group of injuries to a child is not accidental or is not consistent with the explanation offered therefor but is instead the result of physical abuse by a person of mature strength....
. . . .
The use of the term "battered child syndrome" by a physician does not, of course, necessarily indicate any wrongdoing by a particular defendant. People v. Jackson, [18 Cal.App.3d 504, 95 Cal.Rptr. 919 (1971)]. Evidence must still be produced to establish that it was the defendant who caused the injuries in question. The trier of fact still must determine the weight to be given the expert's testimony.
The Court of Appeals in the second case, Toennis, 52 Wash.App. at 185, 758 P.2d 539, said:
We agree with the court in Mulder that a qualified physician may testify that within reasonable probabilities, a particular injury or group of injuries to a child is not accidental or is not consistent with the defendant's explanation, but is instead consistent with physical abuse by a person of mature strength. Mulder, 29 Wash.App. at 515, 629 P.2d 462. Although it has been argued that this testimony usurps the function of the jury, we disagree. The jury must still decide whether the particular injury in question was caused by the defendant. Mulder, 29 Wash.App. at 516, 629 P.2d 462.
... Here, the trial court properly ruled that if the proper foundation was established, the doctor could testify concerning the battered child syndrome to explain the continuing nature of the abuse and to rebut any inference of accidental injury.
I agree with the Court of Appeals' articulation of the admissibility of BCS evidence in Mulder and Toennis.[1]
DOLLIVER and GUY, JJ., concur.
NOTES
[1] RCW 9A.36.120(1)(b)(i) provides:

"(1) A person eighteen years of age or older is guilty of the crime of assault of a child in the first degree if the child is under the age of thirteen and the person:
". . .
"(b) Intentionally assaults the child and ...
"(i) Recklessly inflicts great bodily harm."
The State originally charged Norlin with assault of a child in the second degree.
[2] The entire text of ER 404(b) is as follows:

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
[3] See 5 KARL B. TEGLAND, WASHINGTON PRACTICE, EVIDENCE § 120, at 429 (3d ed. 1989) ([I]t is "not entirely clear whether the courts regard the doctrine as a separate basis for admissibility under Rule 404(b)."); cf. EDWARD J. IMWINKELRIED, UNCHARGED MISCONDUCT EVIDENCE § 4:05, at 20 (1992) (Rule 404(b) is inapplicable to introduce evidence of prior injuries by the doctrine of chances because "the intermediate inference is an objective improbability rather than the defendant's subjective disposition.").
[4] In his concurrence, Justice Talmadge emphasizes this basic point. Unlike the cases cited by the concurrence, our holding does not touch upon the admissibility of battered child syndrome through the testimony of physicians or other experts.
[5] ER 403 provides:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."
[1] Every state court to have considered the issue, except one, has held battered child syndrome evidence admissible: State v. Moyer, 151 Ariz. 253, 727 P.2d 31, 33 (Ct.App.1986) ("BCS is not an opinion by a doctor as to whether any particular person has done anything, but rather simply indicates that a child of tender years found with a certain type of injury has not suffered those injuries by accidental means, but rather is the victim of child abuse."); People v. Jackson, 18 Cal.App.3d 504, 95 Cal.Rptr. 919, 921 (1971) ("the `battered child syndrome' simply indicates that a child found with the type of injuries outlined above has not suffered those injuries by accidental means."); People v. Ellis, 41 Colo.App. 271, 589 P.2d 494, 496 (1978) ("[W]here as here, defendant's theory of the case is that death was accidental, and where there is evidence of exclusive parental custody during the relevant period, evidence of past abuses is admissible to prove intent, and to disprove accident."), cited with approval by People v. Taggart, 621 P.2d 1375 (Colo. 1981); State v. Dumlao, 3 Conn.App. 607, 491 A.2d 404, 409 (1985) (quoting Jackson); Smith v. State, 247 Ga. 612, 277 S.E.2d 678, 682, 18 A.L.R.4th 1144 (1981) (permitting expert testimony of battered child syndrome evidence); State v. Screpesi, 611 A.2d 34, 39 (Del.Super.1991) (doctor's opinion of prior child abuse admissible because it merely indicates child was injured intentionally rather than accidentally), aff'd, 609 A.2d 669 (Del.Supr.1992); People v. DeJesus, 71 Ill.App.3d 235, 27 Ill.Dec. 448, 449, 389 N.E.2d 260, 261 (1979) (testimony of prior injuries to child does not necessarily indicate any wrongdoing by a particular defendant, but is merely descriptive of the nature of the injuries observed by the physician; citing Jackson); State v. Conlogue, 474 A.2d 167, 172, 43 A.L.R.4th 1189 (Me.1984) ("battered child syndrome" evidence is not evidence of bad character and is therefore not excluded by ER 404(a)); Commonwealth v. Labbe, 6 Mass.App. 73, 373 N.E.2d 227, 231 (1978) (testimony admissible to show a particular injury or group of injuries is not accidental or is not consistent with the explanation offered therefor but is instead the result of physical abuse by a person of mature strength), cited with approval by Commonwealth v. Day, 409 Mass. 719, 569 N.E.2d 397, 400 (1991); People v. Barnard, 93 Mich.App. 590, 286 N.W.2d 870, 871 (1979) ("Battered child syndrome is a widely recognized medical diagnosis which indicates that a child has been injured by other than accidental means."); State v. Loss, 295 Minn. 271, 204 N.W.2d 404, 409 (1973) ("The establishment of the fact that the deceased child was a battered child was proper, and adequate foundation was laid for the introduction of the evidence which conclusively established a battered child syndrome."); State v. Taylor, 163 Mont. 106, 515 P.2d 695, 703 (1973); People v. Henson, 33 N.Y.2d 63, 304 N.E.2d 358, 349 N.Y.S.2d 657, 664-64 (1973) (quoting Jackson); Bludsworth v. State, 98 Nev. 289, 646 P.2d 558 (1982); State v. Aguayo, 114 N.M. 124, 835 P.2d 840, 845 (1992) ("Evidence admissible under `battered child syndrome' negates accidental injury and is probative of physical abuse by a person of mature strength, but the jury must still decide whether the particular injury in question was caused by the defendant."); Ashford v. State, 603 P.2d 1162, 1164 (Okla.Crim.App.1979) ("past injuries are admissible to counter any claim that the latest injury happened through accident or simple negligence"); Commonwealth v. Rodgers, 364 Pa.Super. 477, 528 A.2d 610, 614 (1987) ("The battered child syndrome simply indicates that a child found with the type of injuries described above has not suffered those injuries by accidental means."), appeal denied, 518 Pa. 638, 542 A.2d 1368 (1988), cited with approval in Commonwealth v. Dunkle, 529 Pa. 168, 602 A.2d 830, 836 (1992); State v. Lopez, 306 S.C. 362, 412 S.E.2d 390, 393 (1991) (battered child evidence admissible to "support an inference that the child's injuries were not sustained by accidental means"); State v. Best, 89 S.D. 227, 232 N.W.2d 447 (1975) (citing Jackson); State v. Durand, 465 A.2d 762, 768-69 (R.I. 1983) (permitting battered child syndrome evidence and citing Jackson); State v. Tanner, 675 P.2d 539, 543 (Utah 1983), ("Battered child syndrome evidence is most frequently cited as admissible to show absence of accident. It is relevant to claims of accidents by the child, e.g., `She was clumsy and fell a lot,' as well as accidents by the adult, `I tripped while I was carrying him.'"), superseded on other grounds by State v. Walker, 743 P.2d 191, 193 (Utah 1987); Price v. Commonwealth of Virginia, 18 Va.App. 760, 766, 446 S.E.2d 642, 646 (1994) (battered child syndrome evidence admissible when doctor did not testify that any specific injury was intentionally inflicted, merely that a pattern existed which supported his conclusion that the child suffered from battered child syndrome).

Notably, the United States Supreme Court addressed battered child syndrome evidence in Estelle v. McGuire, 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). The Court rejected a due process challenge to the admission of evidence of prior injuries to McGuire's murdered daughter, holding "evidence of prior injuries presented at McGuire's trial, whether it was directly linked to McGuire or not, was probative on the question of the intent with which the person who caused the injuries acted." Id. at 69, 112 S.Ct. at 480. The Court adopted and approved of the California cases on battered child syndrome evidence, quoting in particular Jackson: "The demonstration of battered child syndrome `simply indicates that a child found with [serious, repeated injuries] has not suffered those injuries by accidental means.'" Id. at 68, 112 S.Ct. at 480.
The only state court to reject "battered child syndrome" evidence is the New Hampshire Supreme Court. In State v. Guyette, 139 N.H. 526, 658 A.2d 1204, 1206-07 (1995), the court cited only Mulder as a case permitting such evidence, and went on to reject the battered child syndrome in the absence of proof of a connection between the defendant and the prior injuries. The Guyette court did not engage in analysis; it simply said in its short opinion it was not persuaded by the cases allowing such evidence. Id.