COURT OF APPEALS OF VIRGINIA

Present:  Judges Benton, Coleman and Senior Judge Cole
Argued at Richmond, Virginia

MELVIN ALEXANDER MOORE

v.      Record No. 1595-94-2                MEMORANDUM OPINION[*] BY
                                            JUDGE MARVIN F. COLE

COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF APPOMATTOX COUNTY
                    Kenneth M. Covington, Judge

            Andrew M. Sacks (Sacks, Sacks & Imprevento,
            on brief), for appellant.

            Leah A. Darron, Assistant Attorney General
            (James S. Gilmore, III, Attorney General, on
            brief), for appellee.


        Melvin Alexander Moore, appellant, was convicted of

statutory rape of a six-year old girl in violation of Code

§ 18.2-61(A)(iii).  On appeal, appellant argues that the trial

court erred in allowing a mental health therapist "to testify as

an expert witness on the credibility of the [victim] and on the

probability of the incident occurring based on certain

hypothetical questions tracking the [victim]'s symptoms."  For

the reasons that follow, we affirm the judgment of the trial

judge.

                              I.

        The victim was fifteen years old at the time of the trial.

She testified that when she was six years old she had a sexual

encounter with appellant, who had been dating the victim's

_____

        [*]Pursuant  to  Code  §  17-116.010  this  opinion  is  not
designated for publication.

mother.  The victim testified that appellant "held his penis with one of his hands and he rubbed it on the inside of my vagina . . . ."  The next day the victim told her babysitter "that [appellant] had made love to [her]."  She was upset and cried as she disclosed the incident to the babysitter.  She then told her mother about the incident, but her mother did not believe her and did not take her to a doctor.

The victim testified that after the incident, when appellant visited her home, she hid under the bed, in the closet, or behind other furniture.  The victim became upset at television shows that depicted rape or sexual molestation.  She often cried about the incident and, at one time, took an overdose of aspirin.

In September, 1993, about nine years after the incident, the victim saw appellant at a laundromat.  She became upset and left the building, although she had not seen appellant since 1984.  The victim testified that she cried, wished she was dead, and asked herself why the incident had to happen to her.  Her mother took her to the hospital, where she was referred to the Appomattox Counseling Center.

The victim began seeing Carol DePew, a mental health therapist.  She met with DePew for a total of eleven sessions.  DePew has an undergraduate degree in psychology and a masters degree in mental health counseling.  She has "a National Counseling Certification which is a five year renewable license to be continued with 100 continued education hours of which [she]

2

ha[d] earned 50."  She has attended professional seminars on such topics as working with sexual abuse survivors.  DePew testified she has "done extensive professional reading of books and journals on topics relevant to working with adolescents and families and [has] five years of professional experience in therapy primarily working with children and families."  DePew stated that one-third to one-half of her caseload involves children who have been sexually abused.

DePew was qualified as an expert witness over appellant's objection.  Appellant argued to the trial court that DePew's testimony was inadmissible because it would address the ultimate issue in the case -- the credibility of the victim.  However, the trial court ruled that DePew could testify, stating:

> [T]he Court would not allow the witness to give an opinion as to the ultimate fact in issue.  That is in her opinion whether or not this child on the occasion was sexually abused or not.  That is an issue for the jury to draw from all the evidence.  However, I assume what the Commonwealth is about to do is to relate certain behavioral happenings and characteristics and ask the witness whether that type of behavior is consistent with a child who has been sexually abused.  I don't think the response to that, assuming it would be an affirmative one based upon the facts that the Commonwealth would give, would go to invading the province of the jury in deciding the ultimate issue.  I think it would be probative here.  We have something that happened some nine years ago. Basically, the case comes down to the testimony of the young lady at this juncture as would be opposed by testimony of the defendant if he testifies.  But, basically, it's coming down to the testimony of what the young lady has to say.  This could be helpful to the jury in deciding whether or not she is

3

telling the truth.  Something that the jury
could consider other than their observation
of her manner and demeanor and responses here
today.

At the trial, DePew testified in response to hypothetical
questions.  She listed the following as "pretty common" symptoms
of sexual abuse victims:  crying; expressing painful or negative
emotions in inappropriate fashions; becoming upset in a manner
that is not rational or reasonable to others, such as when seeing
something on television reminiscent of the event; safety seeking
behavior such as hiding; overdose or suicide attempts; and panic
attacks upon seeing the perpetrator.  She testified that one of
the strongest indicators of sexual abuse was when the victim
remembered the exact event even though it occurred many years
ago.

Appellant testified and denied any sexual activity with the
victim.

II.

"The admissibility of evidence is within the broad
discretion of the trial court, and a ruling will not be disturbed
on appeal in the absence of an abuse of discretion."  Blain v.
Commonwealth, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988)
(citation omitted).

Relying on Davison v. Commonwealth, 18 Va. App. 496, 445
S.E.2d 683 (1994), appellant argues that DePew's testimony
impermissibly bolstered the credibility of the victim and offered
conclusions as to the ultimate issue in the case.  However,

4

DePew's testimony differed from the testimony offered by the expert witness in Davison. In Davison, the expert witness, a therapist, testified concerning the "phenomenon of recanting" to explain why the victim, a child, would relate prior inconsistent statements that contradicted both the victim's trial testimony and the victim's original version of a sexual assault. Id. at 498-99, 445 S.E.2d at 684-85. We held that the trial court erred in admitting the therapist's testimony because she offered an opinion as to why the victim's testimony at trial should be believed and why the victim's prior inconsistent statement should be disbelieved. Id. at 503-04, 445 S.E.2d at 687.

The testimony of DePew is more analogous to the expert witness testimony offered in Taylor v. Commonwealth, 21 Va. App. ___, ___ S.E.2d ___ (1996). In Taylor, a licensed clinical social worker testified that she "'found [the victim] to be suffering from posttraumatic stress disorder,' explained how she reached her diagnosis from the symptoms that the victim related, and testified that posttraumatic stress disorder may afflict 'anyone who has had a traumatic event outside of normal human experience that would be markedly distressing to almost anyone.'" Id. at ___, ___ S.E.2d at ___. The expert witness also identified criteria necessary to diagnose posttraumatic stress disorder, applied the criteria to the victim, and expressed her professional opinion that "the victim demonstrated the requisite number of criteria to support a diagnosis of posttraumatic stress

5

disorder."  <u>Id.</u> at ___, ___ S.E.2d at ___.

This Court rejected Taylor's assertion that the expert witness' testimony "constituted a comment on the victim's credibility."  <u>Id.</u> at ___, ___ S.E.2d at ___.  We held:

> [E]vidence of an emotional or psychological injury such as posttraumatic stress disorder, like medical evidence of physical injury, is relevant as circumstantial evidence of the occurrence of a traumatizing event.  In this case, [the expert witness'] testimony corroborated the fact that the victim had suffered a traumatizing event, as evidenced by her mental condition, and constituted neither the expression of an opinion on the victim's credibility, nor an opinion as to which version of events should be accepted by the jury.

<u>Id.</u> at ___, ___ S.E.2d at ___.[1]

> An expert in a criminal case "may give an opinion based [only] upon his own knowledge of facts disclosed in his testimony or . . . upon facts in evidence assumed in a hypothetical question," but the witness may not express an opinion as to the ultimate issue to be determined by the trier of fact.

<u>Price</u>, 18 Va. App. at 764, 446 S.E.2d at 645 (citations omitted).

In this case, DePew responded only to hypothetical questions concerning the symptoms related to sexual abuse.  She also testified that victims "could easily have a panic attack" when they encountered their offender, even years after a traumatizing

---

[1]<u>See</u> <u>also</u> <u>Price v. Commonwealth</u>, 18 Va. App. 760, 765, 446 S.E.2d 642, 645 (1994) (holding that an expert witness' testimony concerning battered child syndrome "'is not an opinion regarding the culpability of any particular defendant. . . .   [It] merely tends to show that the child was intentionally, rather than accidentally, injured.'" (citation omitted)).

6

incident.  DePew did not enumerate any details of the incident that the victim may have related to her in therapy sessions. Further, DePew did not testify that she believed the victim was telling the truth, or that, in her opinion, appellant committed the charged offense.  DePew merely responded to hypothetical questions that certain behavior was consistent with that of a sexually abused child.  Therefore, DePew's testimony corroborated the fact that the victim had been sexually abused and "constituted neither the expression of an opinion on the victim's credibility, nor an opinion as to which version of events should be accepted by the jury."  See Taylor, 21 Va. App. at ___, ___ S.E.2d at ___.  Thus, the trial court did not abuse its discretion in admitting the evidence.

Accordingly, the judgment of the trial court is affirmed.

Affirmed.

BENTON, J., dissenting.


In <u>Davison v. Commonwealth</u>, 18 Va. App. 496, 445 S.E.2d 683

(1994), we held as follows:

> In proffering [the therapist] as an expert,
> it was the prosecutor's intent to bolster the
> truth of [the victim's] testimony at trial.
> It is well settled that an expert may not
> "express an opinion as to the veracity of any
> witness."  The prosecutor's question to [the
> therapist] specifically concerned the
> testimony of a "particular . . . witness"
> and, thus, was clearly "intended to elicit an
> opinion" of veracity.  Such evidence is a
> comment on an ultimate fact within the
> province of the jury and must be excluded by
> the trial court.

<u>Id.</u> at 504, 445 S.E.2d at 688 (citations omitted).  <u>See</u> <u>also</u>

<u>Coppola v. Commonwealth</u>, 220 Va. 243, 252, 257 S.E.2d 797, 803

(1979), <u>cert</u>. <u>denied</u>, 444 U.S. 1103 (1980).  Because the

therapist's testimony was admitted in this case only to bolster

the complainant's credibility by discussing truthfulness

criteria, I would hold that <u>Davison</u> controls this case and

reverse the conviction.

In her testimony, the complainant said that Moore had sexual

intercourse with her nine years earlier when she was six years of

age.  Because the complainant was under the age of thirteen when

the incident was alleged to have occurred, the Commonwealth had

to prove only that Moore had sexual intercourse with the

complainant, who was not his spouse, to establish a violation of

Code § 18.2-61(A)(iii).  To support her claim, the Commonwealth

introduced testimony by the complainant's mother and babysitter

8

describing the complainant's behavior during the years following the incident.  However, only the complainant testified that sexual intercourse actually occurred and that Moore was the perpetrator.  Moore testified and denied that he ever had sexual intercourse or other sexual contact with the complainant.  Consequently, this case turned solely on the credibility of the complainant and Moore.

During the Commonwealth's case-in-chief, the prosecutor asked to have the therapist qualified as an expert witness.  Defense counsel objected and stated that "the matters that are in controversy in this case are well within the knowledge and experience of all of these jurors."  Defense counsel argued that the only purpose of the therapist's testimony was to prove that the victim testified truthfully.  In admitting the testimony the trial judge ruled as follows:

> We have something that happened some nine years ago.  Basically, the case comes down to the testimony of the [complainant] at this juncture as would be opposed by testimony of the defendant if he testifies.  But, basically, it's coming down to the testimony of what the [complainant] has to say.  [The therapist's testimony] could be helpful to the jury in deciding whether or not [the complainant] is telling the truth.  Something that the jury could consider other than their observation of her manner and demeanor and responses here today.

The trial judge's reason for admitting the therapist's testimony is precisely the reason that it should not have been admitted.

The prosecutor used the therapist's testimony to validate

9

the truthfulness of the complainant's testimony. By commenting upon the various behaviors that the child was said to have exhibited over a nine year period, the therapist sought to convey by a professional explanation that a rape must have occurred and that the complainant obviously testified truthfully. The therapist's testimony was used in this manner to impermissibly vouch for the credibility of the complainant. "Permitting a person in the role of an expert to suggest that because the complainant exhibits some of the symptoms of rape trauma . . . , the complainant was therefore raped, unfairly prejudices the [accused] by creating an aura of special reliability and trustworthiness." State v. Salana, 324 N.W.2d 227, 230 (Minn. 1982).

The therapist's testimony clearly was systematically structured to bolster the complainant's testimony. (See Appendix). The prosecutor's strategy is obvious in the following question and response:

> Q. Let's go a little further. If this child related to you that I told my mother and I told my babysitter and they didn't believe me, is that consistent with this type of case, sexual abuse case?
>
> A. Yes. Often adults who are charged with caretaking of young children feel so much shame and guilt and denial that a child has been violated while in their care that it is very difficult for them to accept.

At its core, this testimony affirms the therapist's belief in the complainant's truthfulness. In addition, the testimony asserts

that the complainant is credible even when she appears otherwise to others. By asserting as a characteristic of "sexual abuse case[s]" the disbelief of others when hearing a complaint, the therapist gave an expert opinion that truth should be inferred from the disbelief of the others. The illogic is patent. I find no basis to allow an expert to comment on the validity of the complainant's charge and the complainant's truthfulness in the guise of explaining why the complainant would be disbelieved by others.

If there could be any doubt as to the thrust and purpose of this testimony, the Commonwealth's strategy is again revealed in the following exchange:

> Q. Okay. Again, hypothetically, this incident occurred when this child was six years old and some nine years later, is it consistent that the child remember the exact or close to the exact events of what occurred to the child when she was six years old?
>
> A. Yes.
>
> Q. That wouldn't be unusual?
>
> A. That's one of the strongest indicators.

This testimony manifestly and openly asserted that the child truthfully and accurately testified concerning an event that was alleged to have occurred nine years earlier when the child was six. Simply put, the therapist was permitted to give an "expert" evaluation of the complainant's truthfulness.

When expert testimony is intended to prove a witness' credibility, the role of the fact finder is invaded. <u>Davison</u>, at

11

504, 445 S.E.2d at 688. Expert testimony will be allowed to aid jurors only when the jurors must consider matters that are not within their common knowledge. See Callahan v. Commonwealth, 8 Va. App. 135, 138, 379 S.E.2d 476, 478 (1989).

> Where a jury is confronted with evidence of an alleged child victim's behaviors, paired with expert testimony concerning similar syndrome behaviors, the invited inference – that the child was sexually abused because he or she fits the syndrome profile – will be as potentially misleading and equally as unreliable as expert testimony applying the syndrome to the facts of the case and stating outright the conclusion that a given child was abused. The danger of the jury misapplying syndrome evidence thus remains the same whether an expert expresses an explicit opinion that abuse has occurred or merely allows the jury to draw the final conclusion of abuse.

Seward v. State, 652 N.E.2d 490, 499 (Ind. 1995).

The therapist's affirmation of the complainant's testimony proved to be a critical part of the Commonwealth's case. However, the therapist's testimony "was only a thinly veiled way of stating that [the victim] was telling the truth." United States v. Whitted, 11 F.3d 782, 787 (8th Cir. 1993). An expert witness may not give a judgment on the truthfulness of a witness "under the guise of a scientific diagnosis." Id. See also Wescott v. Crinklaw, 68 F.3d 1073, 1077 (8th Cir. 1995). Moreover, when the conflicting testimony of witnesses is an ultimate issue in fact, an expert may not comment upon the credibility of one of the witnesses. See Davison, at 504, 445 S.E.2d at 688. The sole purpose of the therapist's testimony was

12

to comment on the complainant's credibility and to prove she truthfully testified when she said that she was the victim of a sexual assault almost a decade ago.

In pertinent part, the therapist testified as follows:

Q. Hypothetical question. The young lady comes to you and tells you she has been, since she was six years been upset, crying for no reason at all, telling her mother and her best friend or babysitter who is like a mother to her that she had been raped at another time earlier than this, she watches television shows dealing with child molestation and she becomes upset and cries, is this consistent with a child who has been sexually abused?

A. Yes.

Q. Can you explain why?

A. There are certain symptoms that are like symptoms of any illness or disease that are customary for sexual abuse or sexual violence survivors. Those can include inappropriate expressions of emotions, especially painful or negative emotions like excessive crying or crying at inappropriate times.

*          *          *

There are certain symptoms of survivoring sexual abuse or sexual violence that are pretty common and those can include expressing negative or painful emotions in inappropriate fashions. Crying or becoming upset in a manner that doesn't seem reasonable or rational to adults or other people. Witnessing media exposure through books or movies or television or videos that's reminisce of the event that may have occurred in the young person's life. Witnessing that can fracture their psychological defenses and cause the painful emotions to emerge and sometimes those emotions are split off and attributed to other things, maybe upset about school or grades.

Q. Let's go a little further. If this child related to you that I told my mother and I told my babysitter and they didn't believe

14

me, is that consistent with this type of case, sexual abuse case?

A. Yes. Often adults who are charged with caretaking of young children feel so much shame and guilt and denial that a child has been violated while in their care that it is very difficult for them to accept.

Q. Now, if the child further told you that subsequent to this rape episode when this man would come back to the home of her parent, her mother, the child would hide in closets or under tables or under beds, is that consistent with a child that has been abused?

A. Yes. It's really interesting in sexually abused children, male and female children. It's natural for a child to maybe hide and play but children who have been physically violated it's called safety seeking behaviors and they go to excessive lengths and they often hide in the bottom of closets or behind furniture. They hide much more than a regular child would for regular reasons of play and they do this because they need to go somewhere where they feel physically and psychologically safe.

Q. This same child four or five years after the original incident took an overdose of medication from the home, is that consistent behavior for a child who has been sexually abused?

A. Yes. Often children themselves, their mind protects the trauma victim by surrounding the event with denial or splitting the event off from the mind and a child can experience so much emotional pain that they don't really know how to cope with it and an overdose or suicide attempts are quite common.

Q. Okay. Now, the child, say, eight years later came in contact with this person, they are in the same room together, is it consistent that this child would become hysterical, have trouble breathing, shaking, screaming, relating back to that incident, is that consistent?

15

A.   Yes.  The child could easily have a panic attack or an episode where the way that their mind disassociates or splits off the emotion content of the trauma, those two things can become connected.  Seeing the perpetrator, or the offender, again could cause the person to feel like the same event is happening and the fear and trauma can emerge.  The subconscious mind has no concept of time like we do.  So we might be able to say a car wreck happened ten years ago, maybe there was a lot of crashing or loud glass breaking and if you were to hear those noises again it may appear that that event was happening all over again. That's because the subconscious memory has been triggered and it seems like it's happening at the same moment again.

Q.   That kind of leads me to my next question.  Back to the hypothetical again, first.  It's been related that this child who is seven or eight years old may have masturbated with her fingers.  Is that consistent with a child that's been sexually abused?

A.   Yes.  Children don't develop healthy sexuality until the onset of hormonal development in adolescence.  So provocative or sexualized behavior in young children is almost always a sign that they have been sexually violated in some way.  It's natural for the body to enjoy the feeling of arousal but not in a sexualized fashion like that.

Q.  Okay.  Again, hypothetically, this incident occurred when this child was six years old and some nine years later, is it consistent that the child remember the exact or close to the exact events of what occurred to the child when she was six years old?

A.   Yes.

Q.   That wouldn't be unusual?

A.   That's one of the strongest indicators.

16